FULLER et al. v. EL PASO LIVE STOCK COMMISSION CO. et al. (No. 409.)†

(Court of Civil Appeals of Texas. El Paso. March 11, 1915. Rehearing Denied April 1, 1915.)

1. APPEAL AND ERROR ⊕⇒699—EXCEPTIONS— SPECIAL INSTRUCTION.

Under Acts 33d Leg. c. 59, requiring that exceptions to the giving and refusal of special instructions appear in the record, assignments

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

of error which complained of the refusal of special instructions requested by defendants, and of the giving of special instructions at request of plaintiffs, but which did not appear in the record, were properly overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2928–2930; Dec. Dig. ⊚⇒ 699.]

2. APPEAL AND ERROR ⊚⇒230—EXCEPTIONS—GENERAL CHARGE.

Where the bill of exceptions to the overruling of defendants' objections to the general charge failed to show affirmatively that the objections were presented to the court before the charge was delivered, the assignment of error predicated on the giving of the charge was properly overruled.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ⊚⇒230; Trial, Cent. Dig. § 680.]

3. PARTNERSHIP ⊚⇒336 — DAMAGES — EVIDENCE ON ACCOUNTING.

H. contracted to buy 15,000 head of cattle, at $17 per head, and assigned the contract to an association composed of plaintiffs and defendants. Defendants agreed to purchase 4,000 head from the association, delivered at California, receiving 3,200 head and breaching their contract with the association. Plaintiffs sued in accounting for profits on the cattle delivered to defendants. Held that, though plaintiffs were entitled to recover profits, the difference between the price at which the cattle were sold to California buyers, and the amount paid to the original seller, plus expenses incidental to delivery, since the evidence showed that, if the partnership had continued to operate and had filled its contracts with the California buyers, out of the 15,000 total of steers, there would have been a number of "cut-backs," which neither buyers nor defendants could have been forced to take, evidence of the value of the cattle in Mexico, although inadmissible on the main point of damages, since the purchase was never at a fixed price, was nevertheless admissible to show the damage to the partnership on "cut-backs" caused by defendants' breach of the partnership agreement.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 797; Dec. Dig. ⊚⇒336.]

4. APPEAL AND ERROR ⊚⇒1050 — HARMLESS ERROR—EVIDENCE.

The admission of immaterial and irrelevant evidence is no ground for reversal, unless it appears that injury resulted from its admission.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ⊚⇒1050.]

5. APPEAL AND ERROR ⊚⇒1032 — HARMLESS ERROR—EVIDENCE.

Where defendants in their brief failed to point out probable injurious consequences of the admission of incompetent evidence, the assignments of error predicated upon such evidence were properly overruled; since, by rule 62a of the Court of Civil Appeals (149 S. W. x), no presumption of injury arises from the mere fact of admission of incompetent evidence, and the burden rests on the party complaining to show probable injury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4047–4051; Dec. Dig. ⊚⇒ 1032.]

6. PARTNERSHIP ⊚⇒336 — EVIDENCE ON ACCOUNTING.

Where plaintiffs and defendants were in partnership for the sale of live stock purchased in Mexico, the defendants agreeing to receive and handle the cattle in El Paso, and where, when sued for an accounting on breach of the partnership agreement, defendants failed to produce any vouchers to show what had been the expense of handling the 3,200 cattle delivered at El Paso, the admission of the testimony of a plaintiff as to what the expense of handling such cattle had been was proper; since the defendants, in accounting for the moneys received from the sale of the cattle, were entitled to deduct the expenses of handling.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 797; Dec. Dig. ⊚⇒336.]

7. PARTNERSHIP ⊚⇒336 — EVIDENCE ON ACCOUNTING.

Where plaintiffs and defendants were associated in a partnership for the sale of live stock bought in Mexico, in a suit for an accounting on breach of the agreement by defendants, evidence showing the amount lost by defendants on 3,200 head of cattle, which they had bought from the association at a fixed price, was inadmissible, as being wholly immaterial on the issue of what loss their own breach of contract had caused their copartners, the plaintiffs.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 797; Dec. Dig. ⊚⇒336.]

8. APPEAL AND ERROR ⊚⇒499—EXCEPTIONS—REQUISITES.

Where the bill of exceptions taken to the exclusion of the evidence referred to in an assignment of error fails to state the objection to the action of the trial court, such action cannot be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2298; Dec. Dig. ⊚⇒ 499.]

Appeal from District Court, El Paso County; M. Nagle, Judge.

Action by the El Paso Live Stock Commission Company and John T. Cameron against C. H. Fuller· and O. B. Fuller. Judgment for plaintiffs, and defendants appeal. Affirmed.

Beall & Kemp, of El Paso, and E. W. Freeman, of Los Angeles, Cal., for appellants. Coldwell & Sweeney and Walthall & Gamble, all of El Paso, for appellees.

HIGGINS, J. The El Paso Live Stock Commission Company and John T. Cameron sued C. H. Fuller and O. B. Fuller for an accounting, and for damages which they allege they sustained by reason of an alleged breach of a certain partnership contract made and entered into by and between the parties, of date August 31, 1907.

On July 29, 1907, Charles F. Hunt and Luis Terrazas entered into a contract whereby Terrazas sold to Hunt 15,000 steers at the price of $17 gold per head, delivery to be made at Terrazas, Gusman, Gallego and Sauz, in republic of Mexico. By instrument dated August 31, 1907, Hunt assigned his rights under this contract to O. B. Fuller, C. H. Fuller, John T. Cameron, and the El Paso Live Stock Commission Company, and by instrument bearing same date the Fullers, as first parties, and Cameron and said company, as second parties, entered into this agreement:

"Whereas, said Chas. F. Hunt did on the 29th day of July, 1907, buy from Don Luis Terrazas, fifteen thousand head of four year old steers and up from the ranches of said Terrazas, in the state of Chihuahua, Mexico, and the

parties hereto being desirous of associating themselves together for the purpose of buying, selling, and handling of said fifteen thousand steers, it is hereby agreed that for and in consideration of the assignment of said contract for steers to the above-mentioned parties, to hold and own equally, that said parties of the first part having furnished the ten thousand dollars gold heretofore paid as forfeit to said Terrazas, that they hereby agree to furnish sufficient money to execute and carry out said deal in such manner as may be determined by the parties hereto.

"It is further agreed herein that said Hunt shall be paid the additional sum of twenty-five cents gold per head by the parties of the first and second parts hereto on all steers bought under this contract as the same are received, that is to say, twenty-five cents, independent of the price fixed for said steers in Terrazas contract; otherwise all profits and losses shall be equally divided and sustained by parties hereto.

"Each party to this contract agrees to lend his personal services to the success of said deal, without extra compensation, and shall make no charges except for actual expenses incurred in carrying out the same.

"And, whereas, it has been agreed and provided that said parties of the first part shall buy and receive four thousand head of the steers mentioned in Terrazas contract, and, whereas, parties hereto are unable at this time to agree upon what price shall be charged up to the parties of the first part for same, it is hereby understood that the price of said four thousand steers shall be agreed upon and fixed by parties hereto, when first shipment of same shall have been made to El Paso. O. B. Fuller shall receive all moneys and disburse same."

The copartnership between the parties to this agreement will be hereafter referred to as the association.

The contract between Hunt and Terrazas required the former to make an advance payment of $10,000 to guarantee its completion, which sum was to be deducted from the purchase price of the 1,000 head last delivered. This money was furnished and paid by the Fullers.

The association began to carry out their copartnership agreement, and, in the course thereof, received of Terrazas several thousand head of steers. After proceeding therewith for some time, the Fullers breached the same, and refused further performance, and put an end thereto. Out of this partial performance and final breach this suit arose for an accounting and damages. The suit resolved itself as follows:

First. Of the 4,000 steers which the Fullers contracted to buy from the association they received approximately 3,200. The agreed price therefor was $28.50 per head. From this price was to be deducted the $17 paid Terrazas and various items of expenses. Plaintiffs averred that their half of the profits to the association upon the 3,200 head sold to the Fullers was $4,814.

Second. Three thousand two hundred and thirteen other head of steers were received by the Fullers under the copartnership agreement, and by them sold. Plaintiffs averred that the profits arising therefrom were $9,000, of which they were entitled to one-half.

Third. The breach of the contract to receive and handle the entire 15,000 head was then averred, and consequent damage to plaintiffs in sum of $8,583 was averred, and recovery thereof sought.

It was averred that the $10,000 paid to Terrazas to guarantee performance of the Hunt contract had been lost to the association by reason of defendant's breach of contract, wherefore plaintiffs asked that in the accounting the Fullers be not credited with this $10,000. Verdict was returned and judgment rendered in favor of plaintiffs for $4,518.44.

[1, 2] Various assignments complain of the general charge, the refusal of special instructions requested, and of special instructions given at the instance of plaintiffs. No exceptions appear in the record to the giving and refusal of special instructions as required by chapter 59, Acts 33d Legislature, and the bill taken to the overruling of the objections filed to the general charge fails to affirmatively show that the objections were presented to the court before the charge was read to the jury. For the reasons indicated, the assignments in question are overruled. Railway Co. v. Fogleman, 172 S. W. 558; Railway Co. v. Wadsack, 166 S. W. 42; Heath v. Huffhines, 168 S. W. 974.

[3] Error is assigned to the admission of evidence as to the value of certain of the cattle at the shipping stations in Mexico. As to 4,000 head, it will be noted from the foregoing statement, the Fullers agreed to purchase same from the association at $28.50 per head, delivered at Betteravia, Cal. The remaining cattle the association contracted to sell at a fixed price per head to the Western Meat Company and Los Angeles Butchers. The Fullers received approximately 3,200 head under their contract of purchase, and the Western Meat Company and Los Angeles Butchers received all of the remainder which the association received under the Terrazas contract. Evidence of the value of the cattle in Mexico would thus seem to be immaterial and irrelevant, as it would throw no light upon the measure of plaintiff's damage. In their accounting for profits upon the cattle delivered to the Fullers and the Western Meat Company and Los Angeles Butchers, they would be entitled to recover the difference between the price at which they were sold and the amount paid to Terrazas, and for expenses incident to delivery. The same rule would apply as to the profits lost through the breach of the contract and refusal upon the Fullers' part to finally consummate it.

But, from the court's qualification to the bills of exception, it seems that at the time the testimony was admitted the evidence showed or tended to show that, had the association continued to operate under the partnership contract, and had they filled their contracts with the Meat Company and Los Angeles Butchers and the Fullers, as far as

said association could, out of said 15,000 head of Terrazas steers, then there would still have been a very considerable number of said 15,000 steers known as "cut-backs" on the hands of said association, which neither the said Los Angeles Butchers, the Meat Company, nor the Fullers would be required to take. In the light of this qualification, the evidence was properly admissible for the purpose of showing the damage to the association upon "cut-backs" arising from Fuller's breach of the copartnership agreement.

[4] But, if it be conceded that the evidence was immaterial and irrelevant, this, of itself, affords no ground for reversal, unless it appears that injury resulted from its admission. This is the rule with reference to the admission of incompetent and irrelevant evidence. Railway Co. v. Hume, 87 Tex. 211, 27 S. W. 110; Railway Co. v. Shifflet, 56 S. W. 697; Railway Co. v. Eckles, 25 Tex. Civ. App. 182.

[5] No presumption of injury in such case now arises in view of Court of Civil Appeals rule 62a (149 S. W. x)—Wells Fargo & Co. v. Benjamin, 165 S. W. 120; Railway Co. v. Geary, 169 S. W. 201—and the burden rests upon the appellant of showing probable injury resulting from the erroneous admission of the evidence. It may be that the evidence in this case amply warranted the jury in finding a verdict against the Fullers for profits upon the 3,200 head received by them at $28.50 per head and the 3,213 head sold to the Western Meat Company and Los Angeles Butchers. Appellants in their brief do not undertake to point out any probable injurious consequence resulting from the admission of the alleged incompetent evidence. Injury will not be presumed to have resulted from the admission of this evidence, from which it follows that these assignments directed against its admission must be overruled.

[6] Error is also assigned to the admission of testimony of J. T. Cameron as to the expense incident to the delivery of the 3,213 head of cattle at El Paso. The court's qualification to the bill shows that, when this testimony was admitted, the defendants had not produced in court any vouchers or other evidence showing what had been the expenses of handling said 3,213 head of cattle, and, as defendants had received the proceeds of the sale of said cattle, and were entitled to deduct therefrom the original purchase price and the expenses of handling same, the court admitted the above evidence as tending to show what sums C. H. and O. B. Fuller would be entitled to deduct as expenses of handling said cattle. The evidence was properly admitted for the reason indicated in the qualification.

[7] There was no error in excluding evidence showing the amount lost by the Fullers on the 3,200 head which they bought from the association at $28.50 per head. They bought these cattle from the association at a fixed price, and the profits or losses to them arising out of this purchase were wholly immaterial.

[8] The bill of exception taken to the exclusion of the evidence referred to in the eighth assignment does not state the objection made to the same. In such case the action of the trial court cannot be reviewed. Railway Co. v. Jarrell, 86 S. W. 632; Grinnan v. Rousseaux, 20 Tex. Civ. App. 19, 48 S. W. 781; Bank v. Smith, 160 S. W. 311; Railway Co. v. Holzer, 127 S. W. 1062; Bank v. Pearce, 126 S. W. 285; Porter v. Langley, 155 S. W. 1042.

Affirmed.