## FIRST NAT. BANK OF ORANGE v. WINFREE. (No. 1862.)

Court of Civil Appeals of Texas. Beaumont.
Jan. 22, 1930.

Rehearing Denied Feb. 12, 1930.

Kennerly, Williams, Lee, Hill & Sears, of Houston, for appellant.

Dies, Stephenson & Dies, of Orange, for appellee.

WALKER, J. This suit was by appellant against W. B. Roan as maker and appellee,

Wm. Winfree, as indorser, upon a promissory note payable to it for $1,990 due on the 19th· day of October, 1926, with interest at 10 per cent. and 10 per cent. additional as attorney's fees. Roan made default, but Winfree answered, alleging that the note sued upon was the last of a series of notes given in lieu of an original note dated the 19th of June, 1926, given by Roan to appellant and indorsed by appellee, and that his indorsement was se-·cured by the following representations, statements, and promises made to him by appellant, the same being the inducements and consideration upon which appellee indorsed said note; that he believed and relied upon all statements thus made to him, and, but for such statements, representations, and promises, would not have executed the original note nor the renewals, or any of them, to wit: (a) The indorsement was for the accommodation of appellant and not of Roan, and that he informed appellant as a part of the indorsement that he would not indorse for Roan, but was willing to and would, and in fact did, indorse the note for the accommodation of appellant; that in this connection appellant represented to appellee that Roan was largely indebted to it; that he had a contract to purchase certain property in Liberty county which he had contracted to sell to the Southern Pacific Railroad Company at about $1,500 in excess of the purchase price, which said $1,500 would be paid to appellant as a credit upon Roan's existing indebtedness, and that, if appellee would indorse the note, it would enable appellant to make this collection against Roan's indebtedness, and for this reason, and upon these representations, and for the accommodation of appellant, and not Roan, appellee indorsed the note upon the further statement and explanation made to him by appellant that it would not hold him personally responsible; (b) that appellant represented to appellee that the proceeds of the note were to be used by Roan to purchase certain property in the town of Liberty, which property Roan had already contracted to sell to the Southern Pacific Railroad Company at about $1,500 in excess of the purchase price, and from the proceeds of the sale this note was to be liquidated, and the balance applied upon Roan's existing indebtedness, and in this connection appellant represented to appellee, as a further consideration for his indorsement, that it would see that this trade was carried out; (c) that appellant represented to appellee that the proceeds of the note were to be used by Roan to purchase certain property in the town of Liberty, and that Roan was to and would execute a deed of trust upon this property when purchased to secure the payment of this note, and that appellant contracted and agreed with appellee to see that such deed of trust, which was to be a first lien against said property, was duly executed.

It was further alleged that the deed of trust was not executed as appellant had promised, and that the sale was not effectuated as appellant had represented and promised. By reason of the facts thus alleged, appellee prayed that he be relieved of his indorsement. Appellee supported the allegations of his answer by his testimony, as follows: •

"I think that I recall the circumstance when I endorsed a note for W. B. Roan, payable to the First National Bank. It was Mr. Roan who first approached me in reference to obtaining my endorsement on the note. I was at home at the time. He and his wife came out there and told me that he was going to buy some property in Liberty, and he had been talking to Mr. McFarlane and told him about the trade, and he lacked a little money of having to buy the property out, and he also had it sold to the S. P. railroad, and he wanted to borrow money from the bank to finish paying this out so that they could turn the property over to the railroad. He told me that he had talked with Mr. McFarlane about it, and Mr. McFarlane told him if he could be sure and get me to sign the note, he would let him have the money, and referring to the Liberty property he said he had got Mr. Mac to handle the deal. I told Mr. Roan I could not sign the note for him in any way, until I talked to Ed about it. By 'Ed' I mean Ed McFarlane; he is the cashier of the First National Bank.

"I did talk to Mr. McFarlane about it. He called me up over the phone while Mr. Roan was there, and told me about Mr. Roan being down there wanting to borrow the money, and he wanted to know about letting him have the money and my endorsing it, and I asked him if he didn't have enough trouble with Mr. Roan's notes already, and he said 'Yes,' but Mr. Roan had given him the privilege of helping him make this deal—and the property was to cost $4,000.00 and they had a chance to sell it for $5,500.00, and I told him as quick as I was able to come down, I would come down and talk to him about it. As to the excess money he said there would be about $1,-500.00 used to pay on some other notes Mr. Roan owed the bank. He did not say anything, at that time, as I remember, about it being an accommodation to the First National Bank.

"The best I remember it was on a Thursday that Mr. Roan came out to see me. I went to the bank on Saturday, in the morning. I talked to Mr. McFarlane that Saturday morning, in the First National Bank. Mr. McFarlane did make promises and representations to me in reference to this transaction and this note. He told me the same thing he told me over the phone about making the deal. I asked him did I have to depend on Mr. Roan making this deal, or was he going to make it, and he said he had the right to help Mr. Roan

make it, and he would see it went through. I told him I would not sign the note if I had to look to Mr. Roan to take care of it, but if he wanted to take the note by my signing it, after me telling him I would not pay it or be responsible for it, why, I would sign it if it would be any help to the bank, and he told me he would not hold me personally responsible. I relied on that promise of Mr. McFarlane's; if he had not told me that, I would not have signed the note. I did not derive any benefit or consideration from the endorsement of that note. He also told me that Mr. Roan was going to send me a deed of trust on the property in Liberty. He said he would see to it that that was done. With reference to what was said about the property having been sold to the Southern Pacific R. R., well, he told me they had the contract—which Mr. Roan had left a letter there showing what the railroad company was to give for it. He told me it would be perfectly safe for me to endorse the note.

"At the time I signed the renewals that Mr. McFarlane testified about, I relied all the time upon those representations and promises that had been made. The first time I discovered that Mr. McFarlane was not going to carry out his promises and agreement was along in the last of 1927. It was after the execution of the note sued on in this case, yes sir.

"When I found out that this deal had not gone through in Liberty, I just left it up to them. I would not have signed any of the renewal notes had it not been for those representations and promises that had been made to me by Mr. McFarlane. Mr. McFarlane told me that it would help the bank for me to endorse that note, on account of them getting the $1,500.00 to pay on those other notes. Mr. Roan told him he could have the $1,500.-00."

On this testimony the trial court entered judgment in favor of appellant against Roan, but against appellant in favor of appellee, relieving him of liability on his indorsement, and, in support of its judgment, filed conclusions of fact to the effect (a) that appellee indorsed the note for the accommodation of appellant and not Roan; (b) that the consideration for appellant's indorsement was the promise, contract, and agreement of appellant to have Roan execute a deed of trust against the land to be purchased with the proceeds of the loan as security therefor, and the circumstances detailed by appellee as to the sale of the land to the Southern Pacific Railroad.

We think appellee's testimony raised the issue, and was sufficient to support the trial court's conclusion, that the indorsement was for the accommodation of appellant and not Roan. If we are correct in this finding, then it follows that appellant had no cause of action against appellee, because "the party for

whose benefit an accommodation paper has been made acquires no rights against the accommodating party." 8 C. J. 259.

██ The trial court's conclusions to the effect that appellant promised, contracted, and agreed with appellee to have Roan execute a first lien against the Liberty county property, and its failure to carry out this agreement, and also appellant's promise to see that the trade with the Southern Pacific Railroad Company was carried out, and the proceeds of the sale applied to the satisfaction of this note, and its failure to do so, constituted a finding that the consideration upon which appellee indorsed the note had failed. It follows therefrom that judgment was properly rendered in appellee's favor on the ground that the consideration for his indorsement had failed.

 Appellant has challenged a conclusion filed by the trial court to the effect that appellant represented that Roan "already had said property sold to the Southern Pacific Railroad Company." Construed in the light of the testimony, it is clear that this meant no more than the executory contract testified to by appellee. Appellant also assigns error on the theory of variance between the date of the original note, as pleaded, to wit, June 19, 1926, and the date as shown by the proof. No error is shown by this assignment, for two reasons: First. The exception was not directed to this particular testimony, but to all the oral testimony offered by appellee. The record shows on this proposition that, when the exception was taken on the ground that the evidence was not supported by the pleadings, "the court thereupon stated he understood counsel was objecting to all oral questions," and on that ground overruled the exception. To constitute error it was necessary that appellant address his exception to that particular part of the testimony which was objectionable. Clearly, a part of appellee's testimony was not subject to the objection urged. Second. The variance did not operate to appellant's prejudice. By other allegations in appellee's answer he clearly identified the time, manner, circumstances, and place of the execution of the original note. The testimony of both parties was related to the execution of the original note, and it is manifest upon the face of the record that appellant was not deprived of any testimony by reason of variance.

All of appellant's other propositions simply challenge the judgment as not having support in the trial court's conclusions of fact. What we have said demonstrates that these propositions have no merit. It follows that the judgment of the trial court should be affirmed in all respects, and it is accordingly so ordered.