## THOMAS v. MURPHY et al.
### No. 10157.

Court of Civil Appeals of Texas. Galveston.
Jan. 23, 1936.

F. F. Beadle and L. Edward Mooney, both of Houston, for appellant.

Sewell, Taylor, Morris & Garwood, Fulbright, Crooker & Freeman, Lester Settegast, R. E. Seagler, and Lee M. Sharrar, all of Houston, for appellees.

GRAVES, Justice.

This cause involves the title to a twenty-acre strip of land (that is five-acre lots Nos. 172, 168, 164, and 1600) in the Tom Ball townsite in Harris county, appellant claims the twenty acres, as an entirety, only under the ten-year statute of limitation, based on his claim of having fenced and used it as a pasture throughout the ten years next following October of 1922, while the appellees asserted a good record title to all of the four component lots as being in themselves.

Since appellant's claim was to the tract as a whole growing out of his claimed fencing and pasturage use thereof alone—he admitting that he had never paid any taxes thereon—and since the fight between the parties was confined to their several contentions over the nature of appellant's alleged possession of the tract during the period referred to, and whether or not it had been adverse and exclusive, the learned trial

court, with the acquiescence of both sides, and on a great body of evidence they mutually conceded to have been sharply conflicting, submitted this one issue to a jury:

"Do you find from a preponderance of the evidence that O. W. Thomas had peaceable and adverse possession, as those terms have heretofore been defined to you, of the twenty acres of land involved in this suit, cultivating, using, or enjoying, the same continuously for a period of ten years before March 7, 1933?"

On the answer, "He did not," judgment was rendered that appellant take nothing, and that the appellees recover the land in accord with the respective fee and leasehold interests set out in their several pleadings.

On the appeal, appellant challenges the action thus taken below only upon the ground that two pieces of evidence were improperly admitted over his general objection that the matter thereby adduced was irrelevant and immaterial, the first being certain tax and redemption receipts offered by the Murphy heirs to show the payment of taxes by them on lot 172, the other being a letter from the Humble Company (one of the appellees) to the Murphy heirs and their attorneys, which had been offered in connection with the oil and gas lease that company held on the Murphy lot, No. 172, and in explanation thereof, the lease itself having already been received in evidence without objection.

In substance, appellant's arguments for a reversal because of the receipt of these two classes of evidence may be thus recapitulated: As to the effect of the tax receipts and redemption certificates, he says in part:

"While there was no issue submitted to the jury on which this evidence could have tended to mislead them, the fact remains that it was admitted in evidence at a time when under the state of pleadings, it could have had no bearing upon any issue which might have been submitted; and with the Court, by its overruling of our objection to its admission in effect informing the jury that it was admissible, it is a reasonable conclusion that the fact that the defendants had paid these taxes was given by the jury some probative value in passing upon the issue which was submitted to them. Neither can it safely be said that the jury in passing upon the issue submitted to them were not influenced and prejudiced—the evidence on this issue being nicely balanced

and sharply conflicting—by the fact so admitted in evidence that the defendants had during all these years, when plaintiff claimed possession, paid the taxes on the land, for, being men of ordinary intelligence, the jury well knew that an affirmative answer to the special issue would take the land away from the people who had been paying these taxes. This evidence was immaterial; it was admitted with the approval of the court, and the jury, therefore, told in effect that they could consider it in answering the issue submitted."

Concerning the other—the Humble Company letter—he urges in part this:

"The instrument in question reads as follows:

"'April 12, 1933, to Mr. Roy C. Sewell and the Heirs of James J. Murphy, Houston, Texas. Gentlemen: You have executed and delivered to Humble Oil and Ref. Co. an oil and gas lease covering lots Nos. 165, 169, 172, 173, and 223 and 225 located in what is known as the Tomball Townsite, in Harris County, Texas, according to a map or plat of same filed on record in the Deed Records of Harris County, Texas. The consideration for the execution of this lease is $200.00 an acre.

"'Humble Oil and Refining Co. is paying you for lots Nos. 165, 169 and 173 and withholding the consideration of $200.00 per acre for lots Nos. 172, 223 and 225.

"'It is understood that a lawsuit is pending between O. W. Thomas, et al. against James J. Murphy, et al., and in said suit O. W. Thomas is claiming full title to lot 172. When Humble Oil and Refining Co. is furnished with a copy of final judgment disposing of this lawsuit and furnished with other proof hereinafter set out, it will immediately pay to you the consideration of $200.00 per acre for said Lot 172. Signed by Humble Oil and Refining Company by J. B. Smith, Agent.'

"On the pleadings and in the state of the evidence at the time this letter was offered, there was no issue either as a primary fact issue or as an evidentiary issue, involving whether or not the Murphy Heirs had gotten all of their money from the Humble Company for their lease. This letter was admitted over objection and exception; while it was immaterial on any issue, it was of such a nature that the jury, very probably, considered it in passing upon the issue which was submitted to them. In fact, with the court's approval of this evidence, by his admission of it, the jury was justified

in giving it some consideration and the only consideration they could have given it was exactly what they did, which was obviously the reason why counsel for defendants wanted it in the record; namely, to show that these defendants, the Murphy Heirs, heirs of an old man who had bought and paid for the property some twenty years ago, were in a position where they were going to get $1000.00 lease money from the Humble Company, if the plaintiff lost this lawsuit, and that they would not get the money if the plaintiff won. The letter also served the purpose of giving the jury some idea of the value of the property, which had, under plaintiff's theory of the case, been adversely claimed and used by him just for farm land and pasture, and provided a suitable opening for argument and conjecture as to the propriety of letting the plaintiff recover this valuable land upon his ten year limitation holding."

■ Neither contention can be sustained under the ultimate conclusion appertaining to them both, that in neither instance was prejudice either presaged in the objections made to any of the testimony when offered, or shown as the reasonably probable effect of its receipt; as against the tax receipts and certificates, the only objection made was, "I do not believe the payment of taxes is any evidence in the case," while that interposed to the letter was merely, "it is immaterial and irrelevant to any issue in this law-suit," neither being more than a dragnet general charge of irrelevancy and in nowise suggesting prejudice. In a case like this, where the record contains an abundance of evidence tending to negative the general objection thus made, our courts have held it insufficient to indicate the particular and specific complaint of prejudice. Early-Foster Co. v. Mid-Tex Oil Mills (Tex.Civ.App.) 208 S.W. 224, writ of error refused; Matthews v. Monzingo (Tex.Civ.App.) 46 S.W.(2d) 424. In this instance, as before indicated, the oil lease the Humble Company held over the Murphy lot had already been offered in evidence without objection prior to the tender of either of these tax receipts of that company's challenged letter; the letter, as its terms disclose, recited the lease was made on the same date therewith, and purported to explain the terms thereof as to the consideration for the lease, as well as its application to the particular lots covered thereby; not only so, but the appellant, by a stipulation appearing in the statement of facts, expressly agreed during the trial that

the appellees, as the holders of the record title to the four lots in suit, all had good title to the land thereby called for, unless it was defeated by his limitation claim; moreover, the belated assertion of prejudice now made could hardly have been plain to the trial court, since other evidence on the question of payment of taxes had been admitted without any objection, that is, Mr. Patterson, the owner of adjoining lot 168 to the Murphy lot on the north, had so testified that he rendered his property for and paid the taxes on it; also a deputy tax collector had testified likewise that the Harlows had paid the taxes on lots 160 and 164 from 1911 through 1932; this situation would, therefore, seem to present the legal equivalent of that determined in the cases cited supra to have been insufficient to constitute error on the ground of prejudice.

■ As affects the tax receipts only, it further seems clear, in the circumstances obtaining, (1) that they were admissible as tending to support the claim to the property by the taxpayer and record owner thereof, under such authorities as Webb v. Lyerla, 43 Tex.Civ.App. 124, 94 S.W. 1095, writ of error refused; Harris v. Wagnon (Tex. Civ.App.) 148 S.W. 606; Houston Oil Co. v. Jones (Tex.Civ.App.) 161 S.W. 92; Odem v. Leahy (Tex.Civ.App.) 264 S.W. 218; Haworth v. Texas & P. Ry. Co. (Tex. Civ.App.) 7 S.W.(2d) 611; Manning v. Standard Oil Co. (Tex.Civ.App.) 67 S.W. (2d) 919; Nunez v. McElroy (Tex.Civ. App.) 174 S.W. 829; these authorities establish the rule that evidence of the payment of taxes is admissible as a circumstance bearing on the claim to the land by the taxpayer, albeit the payment of taxes is not essential to the acquisition of title under the ten-year statute of limitation; especially would that rule seem to attach here, where it was shown that when appellant moved on his land there was an old barn on the adjoining Murphy lot 172, presumably built by Murphy, which lot appellant knew to be "the Murphy five acres," that circumstance having a tendency to show that Murphy and those claiming under him had not abandoned that lot, it further indisputably appearing that both appellant and the Tom Ball people generally knew that Murphy had bought this lot and had held actual possession of it for at least long enough time to build a barn thereon; (2) since the appellant gave testimony himself to the effect that no taxes had been paid on the property in suit by the appel-

lees, the admitted record owners thereof, these tax receipts showing the payment of taxes on lot No. 172 by the Murphy heirs and estate were admissible in rebuttal and impeachment of such testimony given by the appellant; Dove v. Coleman (Tex.Civ. App.) 234 S.W. 917, 918; Berg v. San Antonio St. Ry. Co. (Tex.Civ.App.) 49 S. W. 921, writ of error refused; Evansich v. Gulf, C. & S. F. Ry. Co., 61 Tex. 24; 17 Texas Jurisprudence, § 127, p. 372; (3) as indicated supra, appellant having sought to recover the four lots as a single twenty-acre tract by attempting to prove ten years' use thereof for pasturage purposes by a fence around the whole, both Patterson and Valenti having testified without objection to the payment of taxes on three lots out of the twenty acres, that is, on lots 168 by Patterson himself, and on lots 160 and 164 by the Harlows from 1911 through 1932, the error, if any, in admitting the tax receipts became harmless. Street v. Masterson (Tex.Civ.App.) 277 S.W. 407; Schaff v. Sanders (Tex.Civ.App.) 257 S.W. 670, affirmed (Tex.Com.App.) 269 S.W. 1034; San Antonio Public Service Co. v. Alexander (Tex.Civ.App.) 270 S.W. 199, affirmed (Tex.Com.App.) 280 S.W. 753; Compton v. Republic Bldg. & Loan Ass'n (Tex.Civ.App.) 67 S.W.(2d) 1095.

Considering finally the court's action in admitting the letter, by itself, it is thought no reversible error is made to appear for these further reasons:

(1) After making the purely general objection quoted supra to the letter as a whole, that is, that as such it was immaterial, the appellant then expressly conceded the relevancy of that part of it reciting that a tax judgment had been obtained by the state of Texas against the Murphy heirs, a release of which had to be furnished to the Humble Company before it would pay the considerations for the lease, and did not preserve any objection to any particular part of the letter by a motion to restrict the jury's consideration to certain portions, or otherwise; this action upon appellant's part simply amounted to a declaration that no part of the letter had any bearing on the issues involved, which was denuded of its force by his admission that part of it did have a material bearing, wherefore the overruling of such an objection involved no error obviously all of it could not be irrelevant if any part of it was materially relevant, hence the only reasonable inference the trial court could draw was that he had retracted his objection first made; at any rate, not having confined or addressed his exception to the particular part of the letter he may have still regarded as objectionable, the court's action in admitting the whole of it is not reversible. Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138; First Nat. Bank v. Winfree (Tex.Civ.App.) 24 S.W.(2d) 768; Beverly v. Siegel (Tex. Civ.App.) 51 S.W.(2d) 743; 3 Texas Jurisprudence, § 128, p. 191.

(2) Since, as stated, "the lease of the Murphy heirs to the Humble Company" in its entirety had already been admitted without objection from appellant, which covered six lots in the Tom Ball townsite, only No. 172 of which is involved in this suit, and since by its express terms it recited a consideration of $6,000 without indicating the application thereof to any particular lots, the challenged letter, being of even date with the lease and expressly referring thereto, was admissible to clarify the terms of and to explain the consideration recited in the lease as being a part of the transaction evidenced thereby, especially as they applied to the Murphy lot No. 172, which did not appear in the lease itself. Missouri Pac. Ry. Co. v. Gernan, 84 Tex. 141, 19 S.W. 461; Standard Paint Co. v. San Antonio Hardware Co. (Tex.Civ.App.) 136 S.W. 1150; Johnsen v. Haynie (Tex. Civ.App.) 70 S.W.(2d) 602.

(3) Whether or not the letter was thus relevant and material, however, in the state of the evidence otherwise, it plainly informed the jury of no fact theretofore unknown to them, so could not reasonably have operated to the prejudice of the appellant's interests; the jury already knew the approximate price of the acreage the lease covered, because it recited a consideration of $6,000 for the six lots, and these were unmistakably shown by the pleadings and other evidence to contain five acres each; at the stage of the trial when the letter came in, the jury then well knew from the prior proceedings that Thomas and the Murphy heirs were litigating over the title to the Murphy lot No. 172, so the most the letter could be taken as advising them of with reference to that lot was that the Humble Company was thereby protecting itself against the possibility of appellant Thomas' showing himself to be the true owner of it and was merely anticipating in such event that it might become liable to him for the value thereof; even so, just how this matter operated to the ma-

terial prejudice of the appellant does not appear, nor does he point to any other concrete ground from which the prejudice argued for might have reasonably followed; furthermore, the jury had heard a great deal of testimony from many witnesses directed almost wholly to the question of whether or not appellant had used this twenty acres, particularly between the fall of 1922 and 1925, finding adversely to him on the one comprehensive issue submitted; wherefore, it becomes somewhat difficult to discern a basis for an inference of material prejudice from the admission of a mere letter like this in the circumstances detailed; indeed, it would have seemed to be the very purpose of rule 62–A to bar such an inference when the drawing of it rested upon a presumption so shadowy. Bain Peanut Co. v. Pinson (Tex.Com.App.) 294 S.W. 536; Wells Fargo & Co. v. Benjamin (Tex.Civ.App.) 165 S.W. 120, affirmed by Supreme Court in 107 Tex. 331, 179 S.W. 513; Fuller v. El Paso Live Stock Commission Co. (Tex.Civ.App.) 174 S.W. 930, writ of error refused; Missouri, K. & T. Ry. Co. v. Burk (Tex.Civ.App.) 162 S. W. 457; McFarlin v. Elliott-Tuck, Inc. (Tex.Civ.App.) 71 S.W.(2d) 410; City of Houston v. Pillot (Tex.Civ.App.) 73 S.W. (2d) 585, 586; Rule 62–A, Courts of Civil Appeals.

These conclusions require an affirmance of the learned trial court's judgment; it will be so ordered.

Affirmed.