### EXPORTERS & TRADERS COMPRESS & WAREHOUSE CO. v. CITY OF MARLIN.

#### No. 2150.

Court of Civil Appeals of Texas. Waco.

June 22, 1939.

Rehearing Denied July 13, 1939.

E. M. Dodson and Cecil R. Glass, both of Marlin, for appellant.

Prentice Oltorf, of Marlin, for appellee.

ALEXANDER, Justice.

This suit was brought by Exporters & Traders Compress & Warehouse Company against the city of Marlin to enjoin the city from collecting the 1937 taxes assessed against plaintiff's compress and warehouse in the city of Marlin on the ground that the Board of Equalization had arbitrarily valued the property too high. The city reconvened and sought judgment for its taxes with foreclosure of its lien. A trial before a jury resulted in judgment for the defendant. The plaintiff appealed.

The property was rendered for taxes by appellant at $21,600. The Board of Equalization raised it to $32,750. The jury, in answer to special issues, found that the city of Marlin used 50% of the actual value of property as the basis for assessing property for taxing purposes for the year 1937; that the real value of the property in question was $53,000, but that the action of the Board of Equalization, in raising the rendition from $21,600 to $32,750, was not "arbitrarily discriminative."

Under its first proposition, appellant contends that the evidence shows as a matter of law that the Board of Equalization acted arbitrarily in raising the value of the property. This contention is based largely on the fact that one member of the Board of Equalization testified, in substance, that in raising the rendition the Board took into consideration the fact that during the years 1928 to 1931 the property had been rendered by appellant at $35,000; that a part of the buildings burned in 1932; that at that time the company carried $100,000 fire insurance and actually collected $75,000 in cash; and that since that time the burned portion of the building had been rebuilt, and the Board considered that it was as valuable in 1937 as it was before the fire. If the above facts were all that were considered by the Board, there might be substantial grounds for appellant's contention. The evidence shows, however, that the Board took into consideration many other facts and circumstances in fixing the value of the property. One member of the Board, Mr. Dunkem, testified that he was a property owner and businessman in the city of Marlin; that he had been in and around the compress many times and was familiar with the general construction of its plant and had seen the compress in operation; that there was no definite market for compress machinery in Marlin; that the building had been rebuilt after the fire and he considered the cost of reconstructing the building—not including the machinery—amounted to thirty or forty thousand dollars. Another member, Mr. Oltorf, testified that he was a cotton buyer and owned residential and business property in Marlin and was familiar in a general way with the value of property; that he had been in the compress many times and had seen it in operation and knew its size and construction; that when a representative of appellant appeared before the Board to secure a reduction in the assessment it was disclosed by such representative to the Board that at the time of the fire in 1932 the company carried $100,000 fire insurance and collected $75,000 for the loss; that he considered the unburned portion of the improvements worth a least $25,000; that the improvements had been reconstructed after the fire and from all the facts he concluded that in comparison with the valuation placed on other property for tax purposes, appellant's property was properly valued at $32,750. The third member of the Board testified that he was in the gin business in Marlin and owned business and residential property and was familiar in a general way with the value of property in Marlin; that he had been in and around the compress many times in connection with his business as a gin man; that he had had some experience in constructing buildings of concrete and galvanized iron such as was used in the construction of the improvements in question; that he had used much of the same material in constructing gins, and was familiar with the cost thereof; and that in his opinion the valuation fixed by the Board was proper and equitable. All of the members of the Board testified that it was their intention to be fair and to assess the property on the same basis that other property was assessed at for that year. Another witness, Mr. Petzold, testified that he was in the general contracting business

in the city of Marlin and knew the prices of material and labor used in the construction of improvements such as here under consideration; that he had made an inspection of the improvements and estimated the cost of constructing the plant; that he considered the cost of constructing the buildings, exclusive of machinery and fixtures and the concrete foundation, at $45,000. On the other hand, appellant offered testimony to the effect that all of the machinery in the building was manufactured prior to 1905, and that while it was still in working order, the patents had expired on such machinery, and it could now be purchased for about one-third of its original cost; that new machinery could be bought for approximately $25,000. Other witnesses showed that the floor space of the improvements covered about 75,000 square feet, of which 60,000 was built of concrete.

■■■ A Board of Equalization, in determining the value at which property is assessed, is not bound by the ordinary rules of evidence but may take into consideration any fact or circumstance tending to show such value or which might be considered by a person who was interested in purchasing the property. 61 C.J. 825, § 1038; Allen v. Emery Independent School Dist., Tex.Civ.App., 283 S.W. 674. Vernon's Ann.Civ.St. art. 1051, expressly authorizes the Board to take into consideration the insurance on the property and the rents and profits received therefrom. The members of the Board may consider their own experiences and knowledge of the particular property and of values generally. Johnson v. Holland, 17 Tex.Civ. App. 210, 43 S.W. 71; Wright v. State, Tex.Civ.App., 80 S.W.2d 1015, par. 2, and authorities there cited. A Board of Equalization must be allowed a rather broad latitude in determining the value of property, otherwise, its work would never be finished and the courts would be constantly called upon to substitute their findings for that of the Board. The ultimate conclusion of the Board is subject to attack only for fraud, and mere excessiveness in valuation, at least so long as the overvaluation is within reasonable bounds, does not establish fraud as a matter of law. Port Arthur Independent School Dist. v. Baumer, Tex.Civ.App., 64 S.W.2d 412; Allen v. Emery Independent School Dist., Tex.

Civ.App., 283 S.W. 674; Early v. City of Waco, Tex.Civ.App., 3 S.W.2d 131; Kansas City, M. & O. R. Co. v. Rochester Independent School Dist., Tex.Civ.App., 292 S.W. 964. In view of the evidence above referred to, the court did not err in refusing to give an instructed verdict for the defendant.

■■ Even though the jury found that other property was assessed at 50% of its value and the evidence showed that the appellant's property had been assessed at a value that was in fact more than 50% of its actual value as found by the jury, the verdict did not require a judgment in favor of the taxpayer. The Board had a right to form its own conclusion as to the actual value of the property and may have found that it was worth more than that found by the jury. The court would not be authorized to set aside the assessment merely because the value as found by the jury was less than that found by the Board, especially in view of the jury's finding that the Board had not acted arbitrarily in the matter.

■ Complaint is made of the improper admission of evidence. In some instances, the only objection was that the evidence was "immaterial to any issue in this case," and in others that the evidence was "immaterial to any issue in this case, had no bearing on the plaintiff's plant in Marlin," and in still others that "same was irrelevant and immaterial to any issue in this cause, that same had no bearing on the issue in this cause, and threw no light on the present value of plaintiff's property in Marlin." The evidence does not appear to be inflammatory or otherwise prejudicial. It is a very well established rule that objections couched in such general terms as above set out are not sufficient to present reversible error, where the evidence complained of is not inflammatory or otherwise prejudicial. 41 Tex. Jur. 910; Ferguson Seed Farms v. Fort Worth & D.-S. P. Ry. Co., Tex.Civ.App., 100 S.W.2d 177; Texas Employers Ins. Co. v. Hamor, Tex.Civ.App., 97 S.W.2d 1041; Thomas v. Murphy, Tex.Civ.App., 91 S.W.2d 810.

We have carefully considered all other assignments and find no reversible error.

The judgment of the trial court is affirmed.