## LOYD v. HERRINGTON.

### No. 14603.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 4, 1944.

Rehearing Denied March 10, 1944.

Strasburger, Price, Holland, Kelton & Miller, of Dallas, and Todd, Crowley & Gambill, of Fort Worth, for appellant.

Chester B. Collins, of Fort Worth, and Will R. Saunders, of Dallas, for appellee.

SPEER, Justice.

Appellant Ernest Loyd prosecutes this appeal from an adverse judgment against him in favor of F. D. Herrington, who sued to recover damages alleged to have been sustained by the explosion of a dynamite cap, resulting from the negligent acts of Loyd while acting through an agent, servant and employee.

The pleadings are lengthy and we shall content ourselves with a brief statement disclosing the issuable points. We shall later refer to the jury verdict which will reveal the alleged negligence imputed to appellant (Loyd) and his defenses thereto.

The petition, in effect, states: At the time herein complained of and for a long time prior thereto, appellant (Ernest Loyd) was engaged in contracting with the State of Texas for the construction and repair of public highways in the State. That prior to the incidents involved here, appellant had contracted with the State to build a road in Stephens County; that the area in which said road was to be built was of such a nature that it required blasting of rock and hard dirt with dynamite and dynamite caps. In order to carry out his contract, appellant made some kind of contract with J. L. Johnson, R. M. Keel, Ray Boswell, B. D. Rowe, Horace Clepper and others, whereby said parties began the building and construction of the road for the said appellant. That the work to be done required much blasting of rock and other hard substances and that same was known to appellant and those employed by him to be inherently and intrinsically dangerous to themselves and the public generally, unless every precaution should be taken to prevent injuries; they and each of them knew that by the means employed for blasting, many of the sticks of dynamite and the caps thereon would not explode, and that they each knew that much of said explosive material did not in fact explode when other parts of it did explode; that no attempt was made by appellant and those engaged in the work to gather up and safely keep those parts that

did not explode, but it would be left lying around where it was calculated to do much harm to persons who came in contact with it. It was alleged that many automobiles and trucks were used on the job which required constant repair and when repairs were needed they would be taken to appellee's place of business, for appellee to make the needed repairs. That appellant and those in immediate charge of said dynamite and caps failed to use necessary precautions to gather up and put in a safe place the unexploded dynamite and caps, and that said Rowe, one of those engaged in said work, on about January 31, 1942, for the purpose of playing a prank on said Keel, another man engaged in said work, placed one of the unexploded caps on the motor of the pickup truck driven by Keel, wired to the spark plug of said motor in such a way, as Rowe thought, as would explode and frighten Keel when the motor started. Keel started the motor and drove the truck away, but for some reason the cap did not explode, and the prank failed. The wiring only caused a cylinder in the motor to miss. After the prank failed, Keel continued to drive the truck the remainder of the day, during which time the cylinder continued to miss; that late in the afternoon Keel drove the pickup truck to appellee's garage and requested appellee to repair it and correct the missing cylinder. That without knowledge that a dynamite cap had been wired to the motor, appellee raised the hood to inspect the motor, whereupon the cap exploded and part thereof struck appellee in the eye, causing much pain and suffering and the loss of his eye. Many acts of negligence are specifically alleged as against the employees Rowe, Boswell, Keel, Clepper and Johnson, and appellant, proximately causing the injury. All of said acts are imputed to the alleged master, Ernest Loyd. These acts are reflected by the special issues submitted and answered.

Appellant's 40 special exceptions, along with the several subdivisions thereof, were overruled by the court, and certain of appellant's assignments of error are predicated on that ruling.

Aside from the general denial, appellant specially pleaded that he did contract with the State to build the road, but that he sublet to one J. L. Johnson, as an independent contractor, that portion where the accident happened. Sufficient allegations were made of the necessary facts to make Johnson an independent contractor of that part of the work. He further alleged in effect that while Johnson was performing his contract with appellant, Johnson employed one Keel as foreman; that one of Johnson's employees named Rowe, an oiler on the job, attached the dynamite cap to the motor of a Johnson pickup truck which was being used by Keel, in order to play a prank on his foreman, Keel. That in doing so, Rowe was not in the course of his employment, but upon his own initiative sought to play the prank; that the cap did not explode as Rowe had anticipated, but that Keel drove the truck away and later took it to appellee for repairs when the accident complained of happened.

Appellant also pleaded substantially the facts above mentioned as constituting a new and independent cause of the accident to appellee.

At the conclusion of taking testimony, appellant filed a lengthy motion for an instructed verdict. The motion contains many of the points presented here. Court overruled the motion, to which ruling exception was taken.

In response to special issues, the jury found that: The dynamite caps used in connection with constructing the road were dangerous instrumentalities; the work being done on the road was inherently dangerous; the prank attempted to be played by Rowe on Keel failed; Rowe failed to take proper precautions to avoid injury to plaintiff (appellee) from said dynamite caps; Rowe permitted large numbers of unexploded dynamite caps to remain on and immediately adjacent to said road; Rowe failed to keep in a safe place the cap placed on the truck; after the prank failed Rowe abandoned the dynamite cap which he had attached to the truck; Rowe was negligent in failing to remove the dynamite cap from the truck after his prank failed; by appropriate inquiries the jury answered that each of the acts of Rowe inquired about were negligence and proximately caused the injuries to appellee. Special Issue 13 was alone applicable to Rowe, and in response to that issue the jury found that his act in attaching the dynamite cap to the truck was negligence and proximate cause. To avoid repetitions, we observe that special issues similar to those pointed out concerning the acts of Rowe (except as to No. 13) were submitted relating to the acts of each of the other employees, Boswell, Keel, Clepper, Johnson and of appellant. Affirmative answers were returned to each, including inquiries about negligence and

proximate cause. There were further findings in the verdict that F. D. Herrington received an injury to his right eye as a result of the explosion of the dynamite cap; the jury found his damages to be $25,250; that the placing of the cap on the truck was not a new and independent cause, and that the taking of the truck with the attached unexploded dynamite cap to appellee's garage was not a new and independent cause of the injury.

There was a stipulation made that $281 was a reasonable amount for hospital bills in the event plaintiff should recover. On the verdict returned the court entered judgment for plaintiff (appellee) for the aggregate amount found by the jury and the agreed hospital expense. Motion was filed by appellant for judgment notwithstanding the verdict, which was overruled, as was also appellant's motion for new trial; hence this appeal.

There are 553 assignments of error contained in the motion for new trial and those relied upon are presented here in 25 points in appellant's brief.

Points one and two assert error in the refusal of the court to hold, as a matter of law, that appellant was not liable to appellee in damages because (a) the testimony affirmatively shows that the injuries were sustained as a result of an attempted prank by Rowe while not acting within the scope of his employment, and (b) the testimony affirmatively shows that when Rowe turned aside from the course of his employment and placed the cap on the truck which resulted in appellee's injuries, such act of Rowe was a new and intervening cause of the injuries sustained. These points are based on assignments of error 1, 2 and 3. By reference to the assignments we find they are predicated upon a lack of pleading to support the jury findings on these questions. Special exceptions were presented to the pleadings in this respect and were overruled. As above pointed out, appellant saved his rights under these points by requesting an instructed verdict and his motion for judgment non obstante veredicto.

The pleadings were ample to present appellee's theory of the case. It occurs to us that appellant defended upon a somewhat different ground to the situation relied upon by appellee for recovery. At any rate, the issue of liability was fairly raised, and whether or not there was liability by appellant is the controlling factor in the case.

There is little dispute as to the facts involved. We have seen no Texas case which decides the precise point before us. Courts in other jurisdictions are not in harmony in their expressed views.

There is ample testimony to support appellee's pleadings. The evidence may be summarized with these general statements: Appellant Ernest Loyd was a general road contractor, and at the time of this accident had about 15 separate contracts going on in the state; he spent much of his time visiting the several jobs to ascertain the progress being made on each. The contract with the State under which this controversy arose was for a road in Stephens County. Appellant had contracted with the State of Texas for the construction of a highway in the vicinity, where cuts must be made through formations of rock, requiring blasting with dynamite. Appellant sublet to one J. L. Johnson the work in this area. Johnson's foreman on the job was Keel. The foreman employed and discharged, in the name of Johnson, the men doing the work. Ray Boswell, who had previously been in the employ of appellant, and was in his employ at the time of the trial, was employed by Johnson, the subcontractor, as shovel operator, on the job in question. Immediately prior to the accident here involved, appellant had told Boswell to go to Stephens County and work for Johnson on that job. Rowe was oiler of the shovel operated by Boswell. Clepper was an experienced man in blasting and assisted Keel, the foreman, in the use of the caps and dynamite. Appellant, Keel, Clepper and others testified that dynamite and the caps used with it were known to be dangerous and were considered inherently dangerous instrumentalities.

Appellant had either inspected the area where this road was to be built or had it done, and knew that blasting would be required. He estimated it would require the use of about 6000 pounds of dynamite and 2000 or 3000 caps to do the necessary blasting.

Keel, Johnson's foreman, directed the work of both Boswell and Rowe, and with the aid of Clepper, Keel did the blasting with dynamite and caps, through the rock formation. Keel instructed all employees, including Boswell and Rowe, that in blasting it might happen that when blasts were set off, some of the caps and sticks of dynamite would not explode, but be left in the holes where they were deposited; that such

employees should watch for unexploded caps and dynamite and when found, pick them up and return them to him, Keel, for the protection of employees and other persons who might be injured by possible explosions of the unspent caps and dynamite. Insofar as Keel knew, his instructions had been complied with, except upon the occasion out of which this accident grew.

On the date appellee was injured, Keel, the foreman, was driving one of Johnson's trucks back and forth along a space of about one and a half miles, where the entire crew of workmen were engaged on the job, to supervise the work being done by all. Keel stopped the truck in the vicinity where Boswell and Rowe were operating the power shovel and temporarily left the truck, between two and three in the afternoon. About thirty minutes previously Rowe had picked up a dynamite cap which had not exploded when the last blasting charge was made, placed it in his pocket and did not return it to Keel, his foreman, as he was instructed to do, but seeing his foreman leave the truck, conceived the idea of playing a prank on him. Rowe wired the unexploded cap to the motor in a way that he thought would cause it to explode when the motor was started. He saw Keel return to the truck and start the motor, but the explosion did not occur, and he said he then knew his prank had failed. Keel drove away in the truck without knowledge of the presence of the cap. One cylinder of his motor missed all afternoon as he drove it about on the job. After six o'clock the crew all quit and went to Caddo to receive their pay. Keel drove the truck to appellee's garage, who was in the habit of doing such repair of vehicles used on that job, and left word for appellee to inspect and correct the missing cylinder. Appellee started the motor and raised the hood to see what caused the cylinder to miss, the cap exploded and fragments put out his right eye. Appellee had previously lost the sight of his left eye.

The contentions of appellant, in respect to the facts here involved, are, that it affirmatively appears that the act of Rowe in placing the cap on the motor was purely a personal matter in which he alone was interested, in an effort to play a prank on Keel; that said act was not in the course of his employment, was the proximate cause of the injury and was a new and intervening cause, as defined in the court's charge. He cites and relies on cases of Galveston, H. & S. A. Ry. Co. v. Currie,

100 Tex. 136, 96 S.W. 1073, 10 L.R.A.,N.S., 367; International & G. N. Ry. Co. v. Cooper, 88 Tex 607, 32 S.W. 517; Murphy v. City of Rotan, Tex.Civ.App., 139 S.W.2d 134, writ dismissed, and cases from other jurisdictions.

We have carefully studied the holdings in the cases cited and have concluded that they do not control the situation before us. In the instant case, appellee (Herrington) did not seek to sustain his cause of action because of Rowe's active wrong in attempting to play a prank on his foreman by placing the dynamite cap on his motor so that when it exploded Keel would be frightened, but his case is based upon the negligence of Rowe and the other employees in abandoning the dynamite cap and leaving it attached to the motor after the attempted prank had failed, and because they negligently failed to recover the cap from the motor and safely keep it after the prank had failed to work. It is contended that it was the duty of appellant, as well as that of his employees to whom the dangerous instrumentalities were committed, to at all times use a very high degree of care in the preservation thereof, to avoid injuries to others. Appellee contends that to concede Rowe had stepped aside from the course of his employment when he placed the cap on Keel's motor for his personal amusement, the appellant would not be required to respond, yet Rowe and at least another employee resumed their labors in course of their employment and at that time knew the prank had failed and knew the cap was on the truck where Rowe had put it; that no harm had come of the attempted prank, and in course of their employment it was their duty as servants of appellant to repossess the cap in the same way that duty was upon them if they had knowledge of the existence of an unexploded cap with which they had not attempted to play a prank. To the majority it appears that there is no difference in the duty of the employees, while in course of their employment, to gather up and safely keep the unexploded caps regardless of where they were or how they came to be there. Their omission of duty while in course of their employment raised the issue of negligence, and if damages accrued to another because of that negligence, the master was responsible. The majority also believe that since no harm had come of the original wrongful act in placing the cap on the truck when Rowe and other employees resumed the course of their employment

with the duty to then repossess all unexploded caps, including the one on Keel's truck, and with full knowledge of the existence of the one on the truck, omitted to perform that duty, such omission raised a jury question of negligence and proximate cause. It also appears to the majority that this omission of duty could have become the immediate cause of the accident.

The court gave the usual and approved definitions of "proximate cause" and "new and independent cause". These definitions, without repeating here, may, for clarity, be read into this discussion.

■ The court did not submit, nor was he requested to do so, whether or not the placing of the cap on the truck in the first instance was negligence and proximate cause. But he did submit and the jury found, among other things, that appellant and the named employees failed to take proper steps to avoid the injury and that they failed to keep the dynamite cap in a safe place; that such acts were negligence and proximate cause. Absent anything to the contrary, the jury will be presumed to have followed the charge of the court and that their answers were based upon honest deductions from the evidence. D. & H. Truck Line v. Lavallee, Tex.Civ.App., 7 S.W.2d 661, writ refused.

In the Currie case, supra, the court had before it a state of facts which revealed that a railway employee sought to play a prank on a fellow employee and turned a hose containing compressed air on the latter. Injuries were sustained from which death ensued. It was held that the first employee had turned aside from the course of his employment when he turned the hose on his friend and his active wrong was the proximate cause of deceased's injuries and that the railway company was not responsible. In an exhaustive discussion of the case the court announced what we perceive to be several principles applicable to our case. Court quoted wtih approval from 1 Thompson on Negligence, sect. 532, which stated in substance that a master who employs dangerous agencies must exercise a very high degree of care in their use to avoid injuries to others, and that if the master commits such agencies to his servants he will be responsible for their negligence in connection therewith. Especially applicable to the case before us, the court said [100 Tex. 136, 96 S.W. 1077, 10 L.R.A.,N.S., 367]: "The fact that the servant, in pursuing his own business or pleasure, neglects also to perform some duty which rests upon the master, may make the master responsible if injury fall upon another as the consequence of that neglect; but that is a very different proposition from that maintained by plaintiffs (in that case), asserting liability for an injury resulting, not from mere neglect, but from the positive personal wrong of the servant. This may be illustrated by reference to the leading case in this country upon the subject * * * [Pittsburgh, C. & St. L.] Railway Co. v. Shields, 47 Ohio St. 387, 24 N.E. 658 [8 L.R.A. 464, 21 Am.St.Rep. 840]" Further commenting on the Shields case, court said: "The injury there was not inflicted by the servant in an attempt to play a joke, but *resulted from his negligence in leaving the cartridge where the children found it.*" That is precisely the contention of appellee in the instant case.

In the Shields case, 24 N.E. 658, the railway company kept torpedoes in the caboose for use by the crew in signaling. At the time involved two lady passengers were riding in the caboose and the conductor attempted to play a prank on the passengers by placing two torpedoes on the track, thinking that when the caboose ran over them they would explode and frighten the ladies. Only one of the torpedoes exploded and no effort was made by the conductor to remove the unexploded one from the track. A child found the torpedo and was injured by its explosion. The company was held liable. It is true the conductor was not in course of his employment when he undertook to play the joke, but he was negligent when he failed to retrieve the remaining unspent torpedo and safely keep it, as was his duty at all times, standing in lieu of the master.

The Cooper case, 88 Tex. 607, 32 S.W. 517, cited by appellant, was very similar to the Currie case. There, an employee stepped aside from the course of his employment to play a prank on a fellow employee, by turning a hose on the latter under the belief that it contained cold water, when in fact it contained hot water, and injuries resulted from the immediate active wrong of the first employee, and the master was held not liable. In neither the Cooper nor the Currie case are there any facts to indicate that the attempted pranks failed and that a subsequent duty arose for the master or its servants to resume a duty imposed upon them to safely keep and preserve the dangerous instrumentality through which claimant's injuries were sustained.

As indicated in the Currie case, this presents a different situation to the one before us.

It will be observed that under the facts of both the Currie and the Cooper cases there was no time intervening between when the respective employees departed from the course of their employment to perpetrate the pranks and the time when the victims were injured, that is, a time when the employees resumed their relations of servants to the masters. While the element of time intervening would have no relation to the liability of the master if, in fact, the acts of the servant while not in the course of his employment proximately caused the injury, yet if, as in this case, the prank failed and the servant returned to his labors in course of his employment, charged with the duty to at all times recover and safely keep the dangerous instrumentalities, it occurs to the majority that he was in duty bound to retrieve them from the place where he had put them while not in the course of his employment, and thereafter to preserve them as against harm to others.

■ We say the prank failed, for the reason Rowe's purpose in playing the prank on his foreman was to frighten the foreman by the explosion; this he did not accomplish, and there is nothing to indicate that Rowe had any other purpose in mind in his effort to amuse himself. Rowe, and at least one other employee, knew at all times after the prank failed and they had resumed their labors in the afternoon, where the cap was situated; that it was unexploded; that they had been instructed to gather up such articles and return them to Keel. In this case we think it not material how, when or where these employees gained their information of the existence of the unexploded cap; it is certain that they knew of its existence while in the course of their employment. If their omission of duty was negligence and proximate cause, their acts were imputable to the master. Western Union Telegraph Co. v. Henderson, 62 Tex. Civ.App. 457, 131 S.W. 1153, writ refused.

■ It is the settled rule in Texas that a master who employs inherently dangerous instrumentalities for the consummation of his contract is charged with the duty of exercising a very high degree of care in the use and custody of these instrumentalities, to prevent injury to others; and when he entrusts such dangerous articles to his employees, or others performing the contract for him, their negligence will be imputed to the master. Atex Construction Co. v. Farrow, Tex.Civ.App., 71 S.W.2d 323, writ refused.

■ In this connection appellant pleaded and here contends that since it was stipulated that he sublet his contract to build the road in Stephens County to Johnson, an independent contractor, and Johnson's employees did the acts complained of by appellee, appellant cannot be held liable therefor. The general rule in such situations is not applicable in cases of the nature here involved. The exception to that rule arises when the contract directly requires the performance of a work intrinsically dangerous, however skillfully it may be performed. This is true because the original contractor is the author of the mischief resulting from it, whether he does the work himself or lets it to another. Cameron Mill & Elevator Co. v. Anderson, 98 Tex. 156, 81 S.W. 282, 1 L.R.A.,N.S., 198. Similar are the principles announced in Kampmann v. Rothwell, 101 Tex. 535, 109 S.W. 1089, 17 L.R.A., N.S., 758; El Paso Electric Co. v. Buck, Tex.Civ.App., 143 S.W.2d 438, writ refused, want of merit. The jury found that neither the acts of Rowe in attaching the cap to the motor, nor the act of Keel in taking the truck to appellee's garage, was a new and independent cause of the injury.

As above pointed out, we have seen no case in this State which is decisive of the precise point involved before us. This being an entirely new question, the majority has sought to solve it in the light of reason and by rules most nearly analogous to the one under consideration, and for the reasons assigned we overrule points one and two.

■ Points three to seven, inclusive, assert error in the court permitting testimony to be offered over appellant's objections. The nature of the testimony was that (a) certain witnesses found unexploded dynamite and dynamite caps on the ground in the vicinity of where the blasting was being done, both before and after the accident herein complained of, and (b) the owner of a house situated about fifty yards from the road where blasting was done said, in effect, that rocks from the blasts fell on the house, damaged the roof and broke many window lights while his tenant with his family resided in the house. The objections urged to the testimony when offered were, in effect, that there was no pleading to support it and since appellee's injuries did not result from any of the matters testified

about, the evidence was irrelevant, immaterial and prejudicial. The pleadings of plaintiff (appellee) are replete with allegations to the effect that the manner in which appellant was necessarily required to perform his contract was inherently and intrinsically dangerous, and that appellant and those whom he procured to do the work had full knowledge thereof. There were also allegations that in the vicinity of the area many people lived and would naturally visit and pass the place where the blasting was being done; that in making blasts with dynamite in many instances all the sticks of dynamite and the caps in connection therewith would not explode, and that defendant (appellant) and those doing his work would permit them to remain around the job on the ground, in the road and other places where innocent persons, including women and children, frequently visited and passed. When some of the testimony was offered by plaintiff (appellee), counsel stated to the court that the purpose and materiality of it lay in the fact that appellee must of necessity prove the dangerous character of the explosives and the inherent danger of the job being performed, and the testimony was offered for that purpose and counsel asked the court to limit the effect of the testimony to that purpose. Assuredly it was detrimental to appellant's defense to have such matters proved, but under the pleadings and general situation at issue, the majority believes the testimony was admissible for purposes for which it was offered. The points must be overruled.

■ The eighth point asserts error in the court permitting J. B. Clardy to testify, over appellant's objection, that Johnson had stored the dynamite and caps in a building in town, and that he, Clardy, objected to its being left there and ordered Johnson to remove it. It seems that the bridge work on the Stephens County road was not sublet by appellant to Johnson, but that Clardy was appellant's general superintendent, and, as such, had a limited general supervision over the work being done by Johnson. Clardy testified to the very dangerous character of dynamite and caps used in connection therewith, hence his objections to Johnson retaining the explosives in town. Being asked why he ordered it moved, he answered, "Because I didn't want it there." The witness further said that he never undertook to tell Johnson or Keel how to do the blasting; that Keel was attending to that feature of the work and he was a good man. We think the testimony was admissible, (1) to show the knowledge of appellant's superintendent of the dangerous qualities of the dynamite and caps and (2) to show that Johnson had stored the dangerous substance in town and that appellant's superintendent had sufficient authority over Johnson's conduct to tell him what to do and what not to do.

■ Error is assigned in the ninth point to the court permitting appellant to testify that at the time of the accident in question he had fifteen contracts with the State to build roads. The objection being that it was irrelevant and immaterial, and prejudicial. We see no error in the ruling. It is obvious that appellant had made the contract with the State to build the road and had contracted with Johnson to do certain parts of it, and to that extent appellant was not actively participating in the construction. He said he spent most of his time visiting the various jobs observing the progress being made; his testimony partially explained why he was not personally supervising the crew actually doing the dangerous work of blasting the rock out of that area.

■ Tenth point assigns error of the court in permitting appellee to testify that he had a wife and three children, over appellant's objections that such was irrelevant and immaterial to this case and prejudicial in its effect. We overrule the point because (1) there was other testimony offered substantially to the same effect, without objection. The wife testified in the case, as did also a daughter, and appellee further testified without objection about his little boy; (2) while it doubtless was immaterial to the issues in the case whether or not appellee had a family, yet, as pointed out above, the jury did know that he at least had a wife and two children. There is nothing in the record to indicate that the testimony complained of prejudiced the minds of the jury. Rule 434, Rules Civil Procedure, is substantially the same as the old rule 62a. The effective new rule provides in substance that a judgment will not be reversed for an error of the trial court unless the appellate court should be of the opinion that the error amounted to such a denial of the rights of appellant as was reasonably calculated to cause an improper judgment in the case. In construing the old rule 62a our courts have several times refused to reverse under conditions similar to those before us. See cases of Weatherford, M. W. & N. W. Ry. Co. v. Thomas, Tex.Civ.App., 175 S.W. 822;

Burrell Engineering & Construction Co. v. Grisier, 111 Tex. 477, 240 S.W. 899; Galveston, H. & S. A. Ry. Co. v. Summers, Tex.Civ.App., 278 S.W. 881, writ dismissed.

■ Points 11, 12, 13, 15, 16, 18, 19, 20 and 21 complain because the court overruled the motion for a new trial because of improper argument indulged in by appellee's counsel. In the nature of such assigned errors a recapitulation of each and its analysis would require an opinion of extreme length. We have studied each point and the record applicable thereto. We find that in each instance if argument was made not supported by reasonable deductions drawn from the testimony, the court sustained objections when made and instructed the jury not to consider the parts which the court determined to be unwarranted. Other arguments presented a rather pathetic picture of the blind appellee's outlook on life, they were, in the main, true and not unreasonable deductions from the testimony in the case. The arguments dramatically painted the mental anguish that appellee had and would endure because of the loss of his sight. The court instructed the jury they could consider appellee's mental anguish in the past and future, if any, as a result of the loss of his eye, in arriving at the amount of his damages. There was argument, embraced within these assignments, emphasizing the importance of such contractors as appellant handling so many jobs, to carefully supervise them in a way that the public would not be injured like appellee was; there were importunities made to the jury that they should not be "little" with plaintiff in compensating him for the loss of his sight; argument was made picturing the mental anguish and worry of mind appellee would necessarily suffer concerning his family because he would be unable to continue to assist them and that the jury should render such a verdict that they could thereafter look their wives and daughters in the face. The court sustained the objection to that part referable to the jury looking "your wives and daughters in the face", and so forth. And instructed the jury not to consider it. We have not attempted to discuss in detail each of these points, but have considered them and the majority have concluded they do not present reversible error. We realize that such expressed conclusions are not very helpful to the bench and bar, but we are satisfied that appellant suffered no harmful effects of the matters complained of.

■ Fourteenth point asserts error because appellee's counsel advised the jury, during argument, as to the law applicable to the case. Argument of both sides was reported and we find that appellee's counsel was making legitimate response to argument of appellant's counsel which preceded him. This is of course permissible under Rule 269(e), Texas Rules Civil Procedure. See also 41 Tex.Jur. 798, sect. 75.

■ Seventeenth point complains because the court overruled appellant's motion to withdraw his announcement and for the court to declare a mistrial, on account of the prejudicial effect of the emotions displayed by appellee's wife while testifying in the case. While being questioned about the difference between the acts and conduct of her husband before and after his injuries, the stenographic report shows that she was "sobbing". Two of her answers were not responsive and upon objections by appellant they were stricken by the court and the jury was instructed not to consider them. No exception was taken to the acts of the court in not striking those parts of her answers that were responsive. At opening of court on the following day the motion to withdraw was made, reciting much of her testimony, and the motion was overruled. The court in his main charge instructed the jury that in answering all issues submitted, they should not be governed in any way by any sympathy, if any, they may have for appellee. There is nothing in the record to indicate that appellant was prejudiced by the acts of appellee's wife. In most instances, if prejudice existed it would be reflected by an enhancement in the amount of the recovery. We cannot say this judgment is greater than warranted by law. No complaint is made here of the judgment being excessive. Weatherford, M. W. & N. W. Ry. Co. v. Thomas, Tex.Civ.App., 175 S.W. 822; Burrell Engineering & Construction Co. v. Grisier, 111 Tex. 477, 240 S.W. 899; D. & H. Truck Line v. Lavallee, Tex.Civ.App., 7 S.W.2d 661, writ refused. See also International & G. N. Ry. Co. v. Irvine, 64 Tex. 529; Missouri, K. & T. Ry. Co. v. Avis, 41 Tex.Civ.App. 72, 91 S.W. 877, affirmed 100 Tex. 33, 93 S.W. 424; Chicago, R. I. & G. Ry. Co. v. Barnes, 50 Tex. Civ.App. 46, 111 S.W. 447, writ refused; City of Fort Worth v. Morgan, Tex.Civ. App., 168 S.W. 976, writ dismissed; Northern Texas Traction Co. v. Smith, Tex.Civ. App., 223 S.W. 1013, and cases cited.

We may observe just here that some of the arguments complained of are such as, under certain conditions, which do not exist here, would be improper, but for the reasons, (1) if the majority is correct in the conclusions herein expressed as to the applicable law, there is no dispute in the evidence as to the facts fixing liability, at any rate the evidence raised jury questions, and (2) where, as in this case, the judgment is not excessive, is not against the preponderance of the testimony, and appellant makes no contention that it is excessive, any error committed by the court in the admission of immaterial evidence and overruling objections to improper argument become harmless. These matters are not new to our jurisprudence, assuming that we are wrong in what we have previously said about the admissibility of the testimony and permitting the argument.

Before the passage of any rule of procedure on this question in International & G. N. Ry. Co. v. Irvine, 64 Tex. 529, the Supreme Court announced the rule, in effect, to be, that improper argument furnishes ground for reversal only in cases, (1) in which the preponderance of the evidence seems to be against the verdict, or (2) when the verdict seems excessive and there is reason to believe it was affected by the course of counsel's conduct. The announced rule was followed by the courts many times, and in 1912, Rule 62a was promulgated. We have previously referred to the provisions of that rule.

Construing rule 62a, our courts have often held that the introduction of incompetent testimony does not create a presumption of injury to the losing party. Fuller v. El Paso Livestock Commission Co., Tex.Civ. App., 174 S.W. 930, writ refused; Burrell Engineering & Construction Co. v. Grisier, 111 Tex. 477, 240 S.W. 899 (approving the same rule announced in Weatherford, M. W. & N. W. Ry. Co. v. Thomas, Tex.Civ. App., 175 S.W. 822.

In like manner, the rule has been construed to apply to improper argument. In Lancaster v. Carter, Tex.Civ.App., 237 S.W. 634, affirmed by Supreme Court in 255 S.W. 392, it was held that improper argument in closing a case is not ground for reversal where it appears that it was not reasonably calculated to cause the rendition of an improper judgment. In Rhodes v. Panhandle & S. F. Ry. Co., Tex.Civ.App., 243 S.W. 516, writ dismissed, it was held that to require a reversal for improper argument, it must be made to appear that the argument probably influenced the jury to the prejudice of the appellant. In Southwestern Tel. & Tel. Co. v. Coffey, Tex.Civ.App., 163 S. W. 112, writ refused, it was held under rule 62a reversal would not follow improper argument, where such argument did not probably cause the jury to find a greater amount of damages than it would otherwise have found. In Missouri K. & T. Ry. Co. v. Avis, 41 Tex.Civ.App. 72, 91 S.W. 877, affirmed 100 Tex. 33, 93 S.W. 424, reversal for improper argument, although censured by the court, was denied because it did not appear to the court that the judgment was excessive, nor that the jury was apparently influenced by the argument and appellant did not complain of excessiveness. In Chicago, R. I. & G. Ry. Co. v. Barnes, 50 Tex.Civ.App. 46, 111 S.W. 447, writ refused, court condemned as improper argument made, but held that because defendant's liability was undisputed and the judgment was not attacked because it was excessive, the error was harmless under rule 62a.

Foregoing cases indicate the construction placed on rule 62a, and that rule is now a part of Rule 434, Rules Civil Procedure. We see no material difference in the construction given to the two rules by our courts. Rule 62a was effective when the Supreme Court adopted the opinion of the Commission of Appeals in Chapin v. Putnam Supply Co., 124 Tex. 247, 76 S.W.2d 469, 470. As we understand that decision no new principle was announced, save that emphasis was placed upon the burden of an appellee to show by the record that the asserted error was not reasonably calculated to have influenced the judgment. In that case, it was said: "It is not the policy of the law to impose the burden of showing harmless error upon the person whose rights have been transgressed. That burden rests upon the person in whose favor the transgression was made. The rule has been announced, and is adhered to by this court, that, when improper argument has been made, the adverse * * * party is entitled to a reversal of the judgment, as a matter of law, if, under all the [facts and] circumstances there is any reasonable doubt of its harmful effect, or unless it affirmatively appears no prejudice resulted." The quoted language was approved by the Supreme Court in Smerke v. Office Supply Co., 138 Tex. 236, 158 S.W.2d 302, since rule 434 supplanted rule 62a. The Chapin case, supra, from which the quotation is taken, involved an asserted error of the court in

704

permitting the jury to take the pleadings of the parties out during its deliberations, and there is nothing to indicate whether or not the judgment was affected thereby, nor whether the judgment was excessive, nor whether the court had a reasonable doubt as to the effect upon the verdict. In such circumstances, clearly the rule announced would be a wholesome one.

■ It is the common practice in this state to submit to juries whether or not given facts are such acts as a reasonably prudent person would or would not do. Trial courts are endowed with many discretions in determining matters which litigants often think are essential to their rights; appellate courts will not revise those acts unless in the judgment of the appellate court that discretion was abused. With this well recognized power in our appellate courts, it is not to much to assume that they may determine under all the facts and circumstances whether or not certain acts of the trial court are reasonably calculated to influence the amount awarded by a jury, and even determine whether there is a reasonable doubt that they did affect the verdict. The duty rests upon some court to solve such questions, and we are willing to assume the responsibility that is ours, to the fullest extent.

Applicable to what we have just said, we think the court made a wholesome observation in Bennett v. Jackson, Tex.Civ.App., 172 S.W.2d 395, writ refused, want of merit, where it was held that when a court of competent jurisdiction has rendered its judgment, it will be presumed that the ends of justice have been met through the means of a fair and impartial trial, unless on appeal it be made to appear that a prejudicial infraction against some existing rule of procedural or substantial law has entered into such trial. Rule 434, Rules Civil Procedure, is cited in support of the pronouncement.

■ Points 22 and 23 assign error based upon the assertions that the answers to special issues 69 and 70 were not supported by evidence and that they were contrary to the overwhelming preponderance of the evidence. By answer to issue 69, the jury found that placing the cap on the motor by Rowe was not a new and independent cause. By answer to issue 70, the jury found that the taking of the truck by Keel to appellee's garage, with the unexploded dynamite cap on it, was not a new and independent cause. When we consider the theory

upon which appellee sought to recover, and the undisputed testimony in the case concerning the acts of both Rowe and Keel referable to the two matters inquired about and the court's charge in regard to new and independent cause, we think there is no merit in the contentions presented by these two points.

Belief of the majority is that no reversible error is presented by either of the points relied upon by appellant, and that the judgment of the trial court should and will be affirmed. It is so ordered.

McDONALD, C. J., dissenting.

BROWN, Justice (concurring).

The writer concurs in the holding that the plaintiff has pleaded and the facts adduced have established an issue of liability because of the undisputed facts relating to the placing of the dynamite cap on the engine of the truck, negligently leaving it so attached, and its subsequent explosion and injury to plaintiff.

The writer is unable to see the force of the argument to the effect that the prank sought to be played by employee Rowe on employee Keel "did not fail". Rowe made no effort to and did not intend to play a prank upon the plaintiff, nor upon any other person than Keel. When the cap did not explode, while Keel was operating the truck, it seems to be clear to the writer that the prank failed.

But the fact remains that Rowe and at least one other employee knew that this dangerous instrumentality was wired to the truck that Keel was operating, and they not only saw him drive off with this dangerous thing under the hood of the truck, but they knew that he drove the truck during the remainder of that working day with it thus attached.

Assuredly it was the duty of Rowe and of the other employee, for that matter, to either call Keel's attention to the fact that the cap was there, so that he could remove it, or they should have removed it.

Most certainly they were in possession of the fact of the presence of the unexploded cap, after they resumed work and it does not seem to the writer that the fact that the knowledge of the presence of the cap was obtained when Rowe was not acting within the scope of his employment, serves to relieve the employer because this knowledge continued in the minds of these two employees, after the planned prank

"failed" and after they resumed their places in the ranks of the employees.

Knowing that a very dangerous thing was attached to a vehicle belonging to the master, they and each of them ought to have foreseen that injury could or would occur to some person engaged in using, or in working upon, or in repairing the truck.

The duty devolved upon Rowe and any and all other employees to exercise a very high degree of care to see that this dangerous agency was either used or cared for in such a way as to avoid, or prevent, injury to any person.

In the instant suit, we have the undisputed negligence of at least two employees, who omitted to perform a duty when they were in possession of all of the facts relating to the very dangerous instrumentality and its presence, and the further fact that, in all probability, some person would, could or might be injured by it, if it were allowed to remain attached to the truck.

It seems to the writer that the mere fact that the servant learned of the whereabouts of the dangerous agency at a time when he was then not actually engaged in carrying on the business of his master, i.e., when not acting within the scope, or apparent scope, of his employment, can furnish no avenue of escape from liability for the master, when the servant resumes his labors, with full knowledge of the whereabouts of the dangerous instrumentality, and with full knowledge that it is his duty to safely guard it; and his negligent act of omission to perform a duty, under the undisputed facts in this case, renders the master liable, according to the writer's opinion.

Let us illustrate what is intended to be conveyed here: Suppose Rowe had been called upon, by Keel, to take the truck (to which Rowe had attached the dynamite cap) to the plaintiff for repairs. He learned of the presence of the cap at a time when he stepped aside from his labors and duties —when he was not engaged in the doing of any work for the master—in fact, he acquired this knowledge when he was attempting to play a prank on Keel—but could it be successfully contended that, under the duty devolving upon him, the master would not be liable to the plaintiff, if Rowe had stood mutely by and permitted the plaintiff to work on the truck with the dangerous dynamite cap attached to it and under its hood? We think not.

Then, what difference does it make that Rowe and the other employee, seeing that the planned prank on Keel had failed, stood idly by and permitted Keel to drive it for the remainder of the working day, with the result that it caused the motor to "miss" on the cylinder nearest the attached cap and necessitated the taking of the truck to a mechanic for the repairing of the motor, all of which resulted in the explosion that blinded the mechanic? We think there is no difference in principle because the negligent act of omission of an undoubted duty that must have necessarily been a continuing one is made manifest by the undisputed evidence.

If the majority are right in their conclusions as to liability, then there are no reversible errors presented in the points complaining of the admission of evidence not bearing upon the real issue of liability and complained of as prejudicial to the rights of the defendant, and the argument of counsel complained of likewise as prejudicial and inflammatory.

If our theory of the law in this case is correct (and the case is one of first impression in Texas, in the writer's opinion), a verdict of no negligence on the part of the defendant, and that of no proximate cause of the injury to plaintiff, could not be permitted to stand, in the face of the undisputed facts.

We are unable to see how a jury of normal-minded citizens could do less than find liability.

The undisputed facts compel such a finding. It is inescapable, in our opinion.

What has been written is bottomed on the issue of liability. If under the undisputed facts, as is contended by the defendant, there is no liability, as a matter of law, or even if the issue of liability is one that can be strongly contested, under the undisputed facts—one that the jury may determine either one way or the other, because of conflicts in the evidence—then the writer is frank to say that the following portions of the opinion would not be written: That is to say, if there were conflicting testimony on the issues of liability and proximate cause, then the writer would join in a holding that inadmissible testimony—testimony that bears no relationship to the actual issues raised and on which plaintiff must recover and calculated to prejudice the jury— requires a reversal of the judgment, even though there be no complaint of excessiveness in the verdict, and if the verdict shows upon its face that it is not excessive, when viewed in the light of plaintiff's injuries.

The observations made as to testimony are likewise applicable to the argument, indulged in by counsel, and predicated on the inadmissible testimony and that indulged in on the theory of deductions and conclusions of counsel, and all calculated to prejudice or inflame the minds of the jurors.

But here we have a case wherein (to the writer's way of thinking) none of the testimony of which complaint is made and none of the argument that appears to have been unwisely made could have lent any weight to the stark fact that the plaintiff was rendered totally blind through the negligent act of one who should have protected him against injury but who, unmindful of his unquestioned duty, negligently omitted to perform that duty.

Evidence of scores of negligent acts not pertinent to the real issue in this case and argument bottomed thereon, or uttered as a deduction or conclusion of counsel, could not possibly arouse more sympathy for the plaintiff in the bosoms of the jurors, than the cold, undisputed fact that the light of day has been forever shut out of his life, while he lives in the flesh with nothing much more than his memories, his thoughts and his helplessness.

What then could the inadmissible evidence and the ill-advised argument serve to do?

As the writer views this case, it could have had no effect other than to bring about an excessive verdict.

Here there is no contention that the verdict is excessive. Not only is this so but it affirmatively appears that it is not excessive.

No man, of average intelligence, would give his ability to see for such a sum as was awarded the plaintiff in this case.

It is apparent to the writer that the jury awarded the plaintiff only one-half of what he prayed for, on the theory that plaintiff had already lost the sight of one eye and that the defendant was not in anywise responsible for such loss. The record bears out this natural conclusion. It is my deliberate opinion that in returning the verdict that was reached in this case, the jury dealt with the plaintiff just as if he had had' the sight in both of his eyes, when the injury occurred.

The writer is not contending that the issues of negligence and proximate cause should not have been submitted to the jury, but does say that the undisputed evidence demanded the findings made and that findings to the effect that Rowe was not negligent and that his act of omission of a plain duty was not the proximate cause of plaintiff's injury, could not stand in the light of this record: in the flood-light of undisputed facts.

The writer is of opinion that the holding in the case of Fort Worth & Denver City Ry. Co. v. Walters, Tex.Civ.App., 154 S.W.2d 177, writ refused for want of merit, is not authority for a reversal of the instant suit because of inadmissible testimony.

In the Walters case the issues of liability —of negligence and proximate cause—are such that these are sharply contested matters of fact, whereas in the case before us the issues of fact are undisputed.

Furthermore the Walters case was reversed on the finding of several errors in the record, and we understand that our Supreme Court intends to say, in "refusing a writ for want of merit", that there is no merit in the application because the controlling holdings by the Court of Civil Appeals are correct, and that the action of the Supreme Court is not to be taken as an approval of all the holdings, found in the opinion of the Court of Civil Appeals.

The writer asks permission to say that, if there be degrees of error demanding reversals of judgments of trial courts, it is very evident that the error of the trial court in his preparation of the charge, omitting the issue of a new and independent cause, and in his instructions to the jury, after the jurors had returned a verdict with irreconcilable conflicts, far outweighed the error in admitting testimony that bore upon no issue, in the Walters case.

Considering the plaintiff's age, his life expectancy, his training and experience and his earning capacity, it is apparent that the damages awarded him are not excessive, in the case before us.

Rendered totally blind at his age, with a wife and children to support and maintain, his money loss was shown to be great and his mental suffering greater. Plaintiff's injuries are undisputed.

If we understand the holding of the Supreme Court in Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302, 304, the Supreme Court, in holding that the argument, of which complaint is made, constituted reversible error, considered the fact that the extent of Mrs. Smerke's injuries "was sharply at issue."

Under such circumstances, the argument was calculated to bring about a verdict for a large sum of money.

The writer does not believe that the argument of which complaint is made in the instant suit had any effect upon the verdict touching liability, or that touching the amount of damages awarded.

Under the undisputed facts in this case and the record before us, I concur in the opinion that if there is error it is harmless and did not, in its very nature, affect the finding of the jury of liability, or the amount of damages.

I vote to affirm the judgment.

McDONALD, Chief Justice (dissenting).

Being unable to agree with the decision reached by the majority, I respectfully enter my dissent.

The essential facts are that Ernest Loyd was under contract to build a road for the State of Texas, near the town of Caddo. He sublet a part of the work to J. L. Johnson, as an independent contractor. Among Johnson's employees were Keel, the foreman, Boswell, the shovel operator, Burton Rowe, the oiler on the shovel, Clepper, who did some of the dynamiting, and an employee named Adams.

In the usual course of the blasting operations, some of the sticks of dynamite and some of the dynamite caps would fail to explode. Johnson's employees were instructed to pick them up, whenever found, and turn them over to Keel, the foreman.

In the early part of the afternoon of January 31, 1942, Rowe had in his pocket a cap which he had picked up, and had not yet turned over to the foreman. He conceived the idea of playing a prank on the foreman Keel by attaching the cap to the motor of a pickup truck which Keel drove on the job. The cap was attached to the ignition system of the motor. The cap did not explode immediately, but caused a miss in the motor of the truck. Later that afternoon Keel drove the truck into a garage operated by the appellee Herrington, and requested the latter to find the cause of the miss in the motor. It is undisputed that Keel knew nothing about the cap being on the motor. As appellee raised the hood of the truck the cap exploded, injuring appellee's right eye, and causing him to lose the sight of the eye. Appellee had lost the sight of his left eye in a previous accident, so was left totally blind after the accident here involved.

Herrington sued Ernest Loyd, and recovered judgment for $25,531 upon the verdict returned by the jury. Loyd has appealed.

Loyd moved for an instructed verdict, and later for judgment non obstante veredicto, and here asserts, under appropriate points of error, that the evidence shows as a matter of law that Burton Rowe was not acting within the scope of his employment in placing the cap on the motor of the truck, and that the accident resulted solely from a prank played by Rowe.

Appellee's theories of recovery, as set out in the first three counter points in his brief, are as follows: (1) Since the prank failed, it was not the proximate cause of the accident. (2) The accident was caused by the negligence of Johnson and his employees in failing to remove the cap from the truck after the prank had failed. (3) Since the work being done was inherently dangerous, and the dynamite caps were dangerous instrumentalities, Loyd could not avoid liability by reason of the fact that the work had been delegated to an independent contractor.

The cases relied on by appellee to support his contention that Loyd is liable for the failure of Rowe and the other employees to remove the cap from the truck, after the prank had failed, are Pittsburgh, C. & S. L. Ry. Co. v. Shields, 47 Ohio St. 387, 24 N.E. 658, 8 L.R.A. 464, 21 Am.St.Rep. 840; Galveston, H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S.W. 1073, 10 L.R.A.,N.S., 367; Texas Co. v. Blackstock, Tex.Civ. App., 21 S.W.2d 13, writ of error dismissed; and Atex Const. Co. v. Farrow, Tex.Civ. App., 71 S.W.2d 323, writ of error refused. In my opinion, none of the cases cited announces a rule of liability like that proposed by appellee.

Appellee argues that the Shields case supports his contention that Loyd is liable for Rowe's failure to remove the cap from the truck, although not liable for the placing of the cap on the truck in the first place. It is clear from a reading of the Shields opinion that the holding of the Ohio court is based on the sole ground that the master was liable for the servant's acts in playing the prank because the playing of the prank involved a violation of the duty to safeguard the dangerous instrument. Referring to the prank, the court says that "the first step in that direction is a breach of the duty intrusted to him by the master, and his negligence in this regard becomes at once the negligence of the master" [47

Ohio St. 387, 24 N.E. 659, 8 L.R.A. 464, 21 Am.St.Rep. 840]. An examination of the cases in which the Shields doctrine has been repudiated, some of which will be cited in this opinion, shows that the courts have all given this interpretation to the Shields opinion.

The doctrine of the Shields case has often been repudiated. Our own Supreme Court expressly declined to follow it in Galveston, H. & S. A. Ry. Co. v. Currie, supra. Appellee undertakes to support his theory by some of the remarks found in the Currie opinion. The Currie opinion refers to the Shields case as a leading case, but then refuses to follow it. The opinion does contain a rather offhand remark suggesting that the Texas court thought that the railway company in the Shields case might have been liable for the negligence of the servant in leaving the torpedoes on the track, although not liable for the negligence of the servant in placing them there in the first place. Such remarks, even if they be construed as contended for by appellee, must be classed as dicta for at least two reasons. First, the Ohio court did not base its holding on the theory suggested in the Currie opinion. Second, the Currie case did not involve a claim that the negligence of the servant occurred after the prank had ended. In the Currie case the injury was suffered while the prank was being played. The Currie opinion, therefore, is authority only for what it actually holds.

The holding, and the only holding, in the Currie case is as shown in the following excerpt from the opinion [100 Tex. 136, 96 S. W. 1077, 10 L.R.A.,N.S., 367]:

"His (the master's) responsibility is for the management of his business by the servant, and not for injuries done by the servant's independent conduct of his own affairs. In such matters, it may be granted that the exercise of proper care for the safekeeping of the dangerous thing is the duty of the master, and that the omission of that care by the servant is, in law, the omission of the master. But when the servant employs the thing, not in the master's service, but wholly as an instrument of malice or amusement, he takes himself for the time out of the employment."

Appellee appears to realize that the Currie case precludes a recovery because of Rowe's act in placing the cap on the truck, and he attempts to base liability on the fact that Rowe left the cap on the truck after Rowe realized that his prank had failed.

The trouble with this contention is that the fact premise upon which it is based is not borne out by the evidence. Rowe testified that he realized his prank had failed when the cap did not explode when the truck was started. But the regrettable and inescapable fact is that his prank did not fail. It succeeded, and with disastrous consequences. It is not material that the cap did not explode at the time and place where Rowe guessed that it would explode. The material and controlling fact is that the cap exploded solely and only because Rowe, in playing a prank not connected with or pertaining to the master's business, attached the cap to the ignition system of the truck. Rowe set the stage for the prank. He left it set. The prank was played. The show did not go off exactly as Rowe planned, but it took place just the same. It had nothing to do with Ernest Loyd's business, and Loyd is not, under any decisions that I have been able to find, chargeable with the consequences of Rowe's prank.

Appellee, and seemingly the majority of the court, are impressed with the thought that Rowe knew that the cap was on the truck, and that he should have removed it. He ought to have removed it. But it is equally true that he ought never to have placed the cap on the truck in the first place. Placing the cap on the truck was a positive, deliberate, intentional act on Rowe's part. Leaving the cap there was at most a careless omission. If the degree of Rowe's culpability is the test, then it is inconsistent to say that Loyd is not liable for the positive, intentional wrong of his servant, but is liable for the careless omission of the servant. If liability is based upon Rowe's knowledge of the fact that the cap was on the truck, the same inconsistency is reached. When Rowe placed the cap on the truck, he of course at once knew that it was there, and expected and intended that it should explode. When the truck drove away, Rowe knew only what he had known all along, that the cap was on the truck. But, to accept appellee's theory of the facts, Rowe thought that the cap would not then explode. Appellee is in this odd dilemma. In order to arrive at the conclusion that the prank had failed, he must say that Rowe knew that his prank had failed and that the cap was not going to explode, yet he must still say that Rowe could have reasonably foreseen that it would explode. It is odd to argue that Loyd was free from liability while Rowe expected and intended that the

cap would explode, and yet became liable when Rowe began to think that the cap was not going to explode.

In this same connection, it is to be remembered that the rule imposing liability upon the master for failure to safeguard a dangerous instrument arises out of the fact that the instrument is inherently dangerous. If it is not safeguarded, it may fall into the hands of some third person who may be hurt by reason of the dangerous quality of the instrument. But in the present case the cap did not explode because of its inherently dangerous character; it exploded because Rowe attached it to an electrical device which he intended should and which did cause it to explode. This cap would never have exploded in appellee's garage if Rowe had not, in order to play his prank, attached it to the ignition of the truck. As is said in International & G. N. Railway Co. v. Cooper, 88 Tex. 607, 32 S.W. 517:

"The dangerous character of the machinery does not affect the question in this case, because the injury did not result from the dangers connected with the operation of such machinery."

The Currie opinion quotes the above excerpt, and says:

"The distinction is not technical merely but is made necessary by the reason upon which the rule * * * rests."

The other two cases cited by appellee are not in point. Texas Co. v. Blackstock, Tex. Civ.App., 21 S.W.2d 13, writ of error dismissed, involves principles of law not applicable here. A truck driver, contrary to his instructions, invited a child to ride on the truck. When the child alighted from the truck, the driver negligently permitted it to walk across the road in the path of another truck. The decision is based on the proposition that the child was in at least as good a position as would have been a trespasser on the truck, and that the driver owed a duty of exercising ordinary care not to remove the child from the truck in such manner as would be dangerous to the child. Atex Const. Co. v. Farrow, Tex. Civ.App., 71 S.W.2d 323, writ of error refused, does not involve questions pertaining to scope of employment. It cites the Shields case, but only for the proposition that the user of a dangerous instrumentality must use due care to safeguard it.

The following are cases which appear to me to be against appellee's contentions:

In Goupiel v. Grand Trunk Ry. Co., 96 Vt. 191, 118 A. 586, 587, 30 A.L.R. 690, the fireman and engineer on a locomotive placed a torpedo on the track, and caused the locomotive to run over it, in order to scare another. The Railway Company was held not liable. In the opinion it is said:

"This defendant was not an insurer against accidents occasioned by the unwarranted use of these explosives. It was only liable for the negligence of its servants in keeping or handling them when that negligence consisted of some act or omission within the scope of the servant's employment. It is not enough that such act or omission occurred within the working hours of the servant, nor that he was at the time on duty. If the act or omission complained of was done or omitted to carry out some direction of the master, express or implied, in the furtherance of the work the servant was employed to do, the master is chargeable for it; if it is done or left undone to effect some purpose of the servant alone, the master is not so chargeable."

The court refers to the Shields case, and expressly repudiates its holding.

In Obertoni v. Boston & M. Railroad, 186 Mass. 481, 71 N.E. 980, 67 L.R.A. 422, an eight year old boy found a torpedo at the defendant's grade crossing, took it home, cracked it with a rock, and was hurt. There was testimony that a brakeman threw the torpedo to the flagman at the crossing, that the flagman threw it back to the brakeman, that the brakeman did not catch it, that it fell to the ground, and that after the train passed the flagman went back to his covered station without picking up the torpedo. The court said:

"But we are of opinion that, if the torpedo came to and was left on the planking in the way testified to by Paris, the defendant is not liable, and for the reason that the jury were not warranted in finding that the brakeman and flagman, in throwing the torpedo back and forth, and leaving it on the crossing, were acting in the course of their employment."

The court cited the Shields case, but expressly refused to follow it. It is to be noted that the Massachusetts court considered not only the act of throwing the torpedo, but the act of leaving it on the crossing.

In Sullivan v. Louisville & N. R. Co., 115 Ky. 447, 74 S.W. 171, 103 Am.St.Rep. 330, the foreman of a switching crew found a torpedo among some rubbish in a tool box on the switch engine. As a prank he placed it on the rail in front of a locomo-

tive. When the locomotive passed over it, the torpedo exploded, and a fragment struck the plaintiff in the leg. The court, denying a recovery, said:

"In argument it is rather admitted that the foreman, in placing the torpedo on the track, was acting outside of his employment, and for that act appellee was not responsible; but, it is argued, for the failure of the foreman to remove the torpedo which he knew was on the track, and almost certain to explode, * * * the master is liable. While the argument is specious, its application is not practical. The act of the foreman in placing and leaving the torpedo on the track was one continuing act, having in view but one object, namely, the explosion of the torpedo, that its noise might frighten the engineer or fireman. It is not possible to segregate this one continuous act so that it could be said that in part of it the servant was acting for himself and in another part * * * for the master. In truth it was conceived, set in motion, and consummated in furtherance alone of the servant's own purpose, entirely disconnected from any duty whatever imposed by his employment."

The court cited the Shields case, and refused to follow it, saying:

"This doctrine, if carried to its full logical result, would mean that any injury done by a servant with the master's property in the servant's care would bind the master. * * * The best-considered and most numerous authorities do not draw the line at whether the servant is using his master's property when inflicting the injury in question, but whether he is then representing the master."

In Johnson v. Chicago, R. I. & P. R. Co., 157 Iowa 738, 141 N.W. 430, 431, L.R.A. 1916F, 945, plaintiff lived near defendant's right-of-way. She was a friend of a brakeman employed by defendant. While upon a passing train he undertook to deliver to her a personal note from himself. He attached the note to a torpedo as a weight, and tossed it to the ground near plaintiff's home. The note and the torpedo were brought to her by her sister. Later plaintiff was injured by the torpedo, being unaware of its dangerous character. In denying the plaintiff a recovery, the court stated that the controlling question in the case was whether the act complained of was within or without the scope of the brakeman's employment. In the opinion it is said:

"We find no case which has gone to the extent of holding that such an act as this can be deemed as within the scope of the employment of the servant."

The court quotes an excerpt from Cooley on Torts (p. 536):

" 'The test of the master's liability is not the motive of the servant, but whether that which he did was something which his employer contemplated, and something which, if he could do it lawfully, he might do in the employer's name.' "

The court cites the Shields case, but declines to follow it.

In American Ry. Express Co. v. Davis, 152 Ark. 258, 238 S.W. 50, 52, 1063, the defendant's employee had been furnished a pistol to use in safeguarding property handled by the defendant. The employee in question and another employee named Davis engaged in play having nothing to do with defendant's business. Garrison, the employee who had the pistol, went back to his room to resume work. Davis followed him, and persisted in carrying on the frolic. Garrison testified that he knew that Davis was afraid of pistols, and could be easily frightened with one. So, in order to end the frolic, Garrison turned the cylinder so that he thought the hammer rested on an empty chamber, and pointed it at Davis. The weapon was discharged. Davis was hit, and died of his injury. The opinion points out that plaintiffs rested their case solely upon the theory that defendant had intrusted its employee with an inherently dangerous instrumentality, and was liable for the failure of the employee to safeguard the dangerous instrumentality. The court said:

"In the present case, if it can be said that a pistol is a thing inherently dangerous, the injury to Davis was not inflicted on account of the inherent danger, but because of the negligent act of a servant while using the pistol for his own private purposes."

The court disapproves of the doctrine announced in the Shields case, saying that it is out of harmony with the great weight of authority.

The jury found Loyd, Johnson, and some of Johnson's employees guilty of many acts of negligence. Many of the findings, it seems to me, have no support in the evidence, and most of them do not appear to be relied on by appellee in his brief. They should, however, be mentioned.

The jury found Rowe, Boswell, Keel, Clepper, Johnson and Loyd all guilty of

negligently permitting large numbers of unexploded caps to remain on and near the road being built. There is some evidence that unexploded caps were found on and near the road. There is no evidence that any of the persons named left such caps on the road. And it is too plain for argument that permitting large numbers of caps to remain on the road had no causal connection with the accident in question. It was caused by a cap which Rowe had picked up, as he was required to do, and then used for a purpose of his own.

The jury found that Boswell failed to take proper precautions to avoid injury to plaintiff from the dynamite caps, that he negligently failed to remove the cap after the prank failed, and that he abandoned the custody of the cap after the prank failed. Findings of negligence and proximate cause followed. The evidence shows that Boswell participated in a prank attempted to be played by the employee Adams, who placed a cap on the truck a short time before Rowe did. Boswell told him where to attach the cap. When the cap did not explode, Adams removed it. Rowe did not tell Boswell that he was going to put another cap on the truck, but did tell Boswell about it after he had placed it on the truck. It does not seem to me that under these circumstances appellant should be held for the failure of Boswell to undo the prank played by Rowe. Boswell was an active participant in the prank played by Adams, and at least a passive participant in the prank played by Rowe. In Goupiel v. Grand Trunk Ry. Co., supra, the fireman placed a torpedo on the track, while the engineer drove the locomotive forward so as to run over the torpedo. The court says, referring to the engineer:

"He was as much outside the scope of his employment as was the fireman. * * *"

The jury found that Keel, Clepper, Johnson and Loyd failed to take proper precautions to avoid injury to plaintiff from the dynamite caps, and that they failed to keep in a safe place all unexploded caps used on the road. There is not a scintilla of evidence to show that any of the four persons just named had any knowledge whatsoever of the prank played by Rowe until after the accident occurred. It is not shown that either Johnson or Loyd was on the job on the day of the accident. The most pertinent thing that can be said about this portion of the verdict is that the jury obviously was not guided by the evidence in arriving at the answers.

I am of the opinion that the judgment of the trial court should be reversed, and judgment here rendered in favor of appellant. But if the majority be correct in holding that the evidence is sufficient to support the verdict, I am of opinion that the judgment should nevertheless be reversed, and the cause remanded for a new trial.

Under appropriate points of error complaint is made of the admission of testimony concerning the following matters: (1) That sticks of dynamite were found near a public school where children were playing and men were working. (2) That dynamite caps were left overnight in holes in rocks, some thirty or forty days before the accident here involved. (3) That dynamite caps were found on the road some two or three weeks after the accident. (4) That no notice was given to a person who lived near the road prior to blasting on the road in question. (5) That blasts were set off when persons were in a home near the road. (6) That the subcontractor Johnson had placed some dynamite in a certain building, and had moved it on complaint of one J. B. Clardy. It seems clear to me that the evidence complained of had no bearing on the narrow ground of liability asserted here, to-wit, the failure to remove the one dynamite cap placed on Keel's truck by Rowe on the afternoon of January 31st. From the very nature of such evidence it would be calculated to prejudice the jury against the defendant, and the fact that the jury was influenced by something other than the evidence is strongly, if not conclusively, indicated by the fact that many of the answers of the jury to the issues submitted are without any support whatever in the evidence, as has already been pointed out.

Loyd was asked if he did not have fifteen different road contracts with the State Highway Department at the time of this accident. While I would be slow to consider this reversible error if taken alone, yet, when considered in connection with all of the other testimony which had no bearing on the precise issue before the court, and the argument of counsel concerning it, it could only have had the effect of creating a prejudice against appellant, on the ground that he was a person of large means, as contrasted with a blind and poor plaintiff.

Complaint is made of portions of the argument of appellee's counsel to the jury.

The portions complained of are too lengthy to be copied here, but, in my opinion, when considered in connection with the inadmissible testimony mentioned above, and with the answers to many issues which have no possible support in the evidence, are such as to require a reversal. The inadmissible testimony, together with the argument, painted to the jury a lurid picture of negligence in the handling of dynamite and dynamite caps which had nothing to do with the precise question upon which liability is claimed in this case, and could only have had, and demonstrably did have, the effect of causing the jury to answer every issue favorably to appellee regardless of the state of the evidence.

This court, in Fort Worth & Denver City Ry. Co. v. Walters, Tex.Civ.App., 154 S.W. 2d 177, 178, writ of error refused for want of merit, had before it a case in which, it was claimed, the defendant maintained a dangerous situation which caused an automobile wreck. Plaintiff's counsel interrogated a witness concerning the number of wrecked automobiles that he had picked up at this particular place. After the evidence was introduced, plaintiff joined defendant in the request to exclude it. Defendant contended that the error could not be cured, and requested the court to declare a mistrial. The trial court declined to declare a mistrial, but did attempt to withdraw the damaging testimony. In our opinion, we held:

"We believe that this case presents one of those situations where the harm is done and that nothing the trial court could say would eradicate the harmful impression that the evidence made on the average juror's mind.

"This evidence was calculated to prejudice and even inflame the minds of the jurors, by showing that accident after accident had occurred at the identical spot.

"The assignment of error is well taken. Gulf, C. & S. F. Ry. Co. v. Levy, 59 Tex. 542, 46 Am.Rep. 269; City of Pampa v. Todd, Tex.Com.App., 59 S.W.2d 114 (Com. of App'ls. opinion approved)."

I have felt obliged to write at considerable length in this opinion, partly because of the unusual nature of the case, partly because of the dicta in the Currie opinion, and partly because the majority opinion does not contain a discussion of some of the cases cited above which seem to me to refute the theory advanced by appellee and adopted by the majority of the court.